Sidnee BARB, Plaintiff,

v.

MILES, INCORPORATED; and Jeffrey
Benninger, an individual,
Defendants.

Civ. A. No. 93–1509.

United States District Court,
W.D. Pennsylvania.

Aug. 25, 1994.

Helen R. Kotler, Pittsburgh, PA, for plaintiff.

John J. Myers, Pittsburgh, PA, for Miles Inc.

Susan Gromis Flynn, Elly M. Heller–Toig, Marcus & Shapira, John J. Myers, Pittsburgh, PA, for Jeffrey Benninger.

*MEMORANDUM*

LANCASTER, District Judge.

This is an action in employment discrimination. Plaintiff, Sidnee Barb, alleges that defendant Miles, Incorporated subjected her to a hostile and abusive work environment due to her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951–963 ("PHRA"), and Pennsylvania common law. Plaintiff contends this sexually hostile work environment resulted primarily from the conduct of her immediate supervisor, defendant Jeffrey Benninger. Plaintiff further alleges that when she complained of Mr. Benninger's conduct to the appropriate supervisory personnel, defendants retaliated with a program of increased harassment, intense scrutiny of her work, and other offensive behavior.

Defendants have filed motions for partial summary judgment. Defendant Benninger argues, among other things, that because he is a co-worker and not an employer, plaintiff

cannot maintain a Title VII or PHRA action against him. Further, defendant Benninger argues that plaintiff has not alleged any wrongdoing by him under her retaliation and negligent retention claims.

Defendant Miles, Inc. ("Miles") moved for partial summary judgment on the basis that plaintiff's negligent retention and negligent infliction of emotional distress claims are barred by the exclusivity provisions of the Pennsylvania Workers' Compensation Act and that plaintiff cannot maintain her PHRA claim because she did not exhaust her administrative remedies. Finally, defendant Benninger contends that plaintiff has failed to make out her negligent infliction of emotional distress claim.

For the reasons set forth below, the court agrees that co-workers are not personally liable under Title VII or the PHRA and, therefore, will grant defendant Benninger's motion on those counts. All other motions will be denied.

## I. *BACKGROUND*

Plaintiff alleges the following.

Plaintiff started working in April of 1989 as the secretary to Miles's trust investment manager, defendant Benninger. She worked under his direct supervision until April 7, 1992. Plaintiff avers that during that period, Benninger subjected her to a sexually hostile environment. Specifically, he called her derogatory names, improperly touched her, and directed unwelcome sexual innuendos at her. He also invited her to dinner and other social functions. When she refused his invitations, he retaliated by criticizing her work and denying her various work privileges.

Plaintiff asserts that she complained to Miles's human resources department several times and tried to find other employment both inside and outside of Miles. Plaintiff contends that defendant Benninger thwarted her efforts to find other employment within Miles by refusing to sign applications and criticizing her work once he became aware that she was attempting to look for other employment.

Plaintiff transferred to another division of Miles in early April of 1992. Plaintiff avers that by this time she had failing health and took the first job transfer within Miles that was offered to her, although it resulted in a loss of benefits.

## II. *STANDARD OF REVIEW*

■ The court will enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute over a material fact must be "genuine," that is, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

■ When a party makes a properly supported motion for summary judgment, the adverse party may not rest upon the mere allegations or denials of his pleadings, but the adverse party's response, by affidavits or as otherwise provided in the rule, must set forth specific evidence of record showing that there is a genuine issue for trial.

■ If the evidence of the nonmoving party is "merely colorable," or is "not significantly probative," the court may grant summary judgment. *Id.* at 249–50, 106 S.Ct. at 2510–11. Similarly, a nonmoving party may not successfully oppose a summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). Rather, the nonmoving party must offer specific evidence found in the record which contradicts the evidence averred by the movant and indicate that there is a genuine issue for trial. *Id.* If the adverse party does not so respond, the court, if appropriate, will enter summary judgment.

With these concepts in mind, the court turns to the merits of defendants' motions.

### III.  DISCUSSION

### A.  Defendant Benninger's Motion—Individual Liability Under Title VII and the PHRA

■ Defendant Benninger moves to dismiss plaintiff's claims brought against him under Title VII and the PHRA.  He contends that supervisors and co-employees are not individually liable under Title VII, but rather the Act only holds the employer liable.  The court agrees.

■ Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex."  42 U.S.C. § 2000e–2(a)(1).  The phrase "terms, conditions, or privileges of employment" includes requiring employees to work in a discriminatory, hostile, or abusive environment.  *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Under Title VII, an "employer" is defined as a person engaged in industry affecting commerce who has fifteen (15) or more employees and "any agent of such person."  42 U.S.C. § 2000e(b).[1]  Supervisors and co-employees are obviously "agent[s] of such person."  Yet, whether supervisors and co-employees are personally liable under Title VII remains unsettled.  Neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has addressed the issue.  Other courts that have addressed the issue have failed to develop a consensus of opinion.  *See, generally, Violanti v. Emery Worldwide,* 847 F.Supp. 1251 (M.D.Pa.1994); *John Doe v. William Shapiro, Esquire, P.C., et al.,* 852 F.Supp. 1246 (E.D.Pa.1994).

The court has reviewed the divergent opinions that have addressed this issue, and is persuaded that the better view is supervisors and co-employees are not personally liable under Title VII.  The issue is, of course, far more complex than the court's treatment here.  In the court's view, however, it is salient that one of the reasons Congress exempted small businesses from Title VII coverage was Congress's perception that small businesses would be unable to cope with the centralized regulations created by a bureaucracy such as EEOC.  *See* 118 Cong. Rec. 2389–90 (1972).  The court can not logically conclude that given Congress's intent to exempt from liability small businesses that employ less than 15 people, Congress also intended to impose personal liability on a sole individual who is not an employer at all.

When Congress included within the definition of employer the "agent of any such person," it intended only to ensure that, unlike the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the Civil Rights Act of 1871, 42 U.S.C. § 1983, employers sued pursuant to the Civil Rights Act of 1964 were subject to the doctrine of *respondeat superior.*  Congress did not intend, however, to create a class of persons liable under the Act who do not fit within the conventional meaning of "employers."

Defendant Benninger's motion for summary judgment on the Title VII claim and the PHRA claim against him will be granted.

### B.  Defendant Miles's Motion [2]
#### 1.  Intentional infliction of emotional distress

■ Defendant Miles moves to dismiss plaintiff's common law claim of intentional infliction of emotional distress because it is preempted by the Pennsylvania's Workers' Compensation Act.  77 P.S. § 1 *et seq.*  The court finds that the preemption provision of the Act is inapplicable under the facts of this case.

---

**1.** The PHRA defines employer as any person employing four (4) or more persons within the Commonwealth.  43 P.S. § 954(b).  The courts have uniformly held that the PHRA should be interpreted consistent with Title VII.  Therefore, although defendant moves to dismiss the PHRA claim on the same ground, for editorial purposes, we will refer only to Title VII.

**2.**  Defendant Benninger also joined in several of Miles's motions.  For editorial purposes we will refer only to Miles in this memorandum.

The preemption section of the Workers' Compensation Act reads:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes ... on account of any injury or death....

77 P.S. § 481(a). The Act exclusively covers "an injury to an employe ... arising in the course of his employment and related thereto...." *Id.* at § 411(1). The statute does include some exceptions:

The term "injury arising in the course of his employment" ... shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; ... but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer....

*Id.*

Defendant contends that *Poyser v. Newman & Co.*, 514 Pa. 32, 522 A.2d 548 (1987), is dispositive of the issue. In that case, the employee sued his employer in tort. He alleged that the employer willfully disregarded governmental safety regulations and deliberately exposed him to a known hazard. Plaintiff argued that an employer's intentional torts are not subject to the exclusivity provision of the Act. The court rejected those arguments and held that the Act bars a tort action by an employee against his employer for "any work related injury."

*Poyser* is distinguishable, however, because in *Poyser* the plaintiff claimed that the employer itself created the unsafe working conditions and that his injury was a result of those conditions. That is, plaintiff suffered a work related injury. Here, however, plaintiff alleges that a fellow employee injured her by acts unrelated to the job. The Pennsylvania Supreme Court has not addressed this issue on facts similar to those presented here.

■ When the highest state court has not indicated it would rule otherwise, the federal courts must give significant, though not conclusive, weight to the state's intermediate appellate courts' decisions. *Gulick v. Chia S. Shu, M.D., P.C.*, 618 F.Supp. 481 (M.D.Pa.

1985). The court is satisfied that the Pennsylvania Superior Court's analysis and holding in *Schweitzer v. Rockwell International*, 402 Pa.Super. 34, 586 A.2d 383 (1990), accurately reflects the correct approach to the issue.

In *Schweitzer*, plaintiff filed a claim of intentional infliction of emotional distress arising from sexual harassment in the workplace. The plaintiff alleged that her supervisor made lewd remarks about her body and touched her inappropriately. Subsequently, she was transferred to a different position. The court held that where one employee intends to injure a fellow employee for personal reasons the resultant injury is not work related nor subject to the preemption section of the Workers' Compensation Act. It stated that "the alleged emotional distress arose from harassment personal in nature and not part of the proper employer/employee relationship." *Schweitzer*, 586 A.2d at 391. Thus, the common law tort claims were not excluded.

District courts in this circuit have expressly adopted the *Schweitzer* reasoning and have allowed plaintiffs to maintain a claim for intentional infliction of emotional distress against their employers, when a plaintiff has alleged sexual harassment in the work place. *Gruver v. Ezon Prods.*, 763 F.Supp. 772 (M.D.Pa.1991); *Garvey v. Dickinson College*, 761 F.Supp. 1175 (M.D.Pa.1991); and *Price v. Philadelphia Elec. Co.*, 790 F.Supp. 97 (E.D.Pa.1992) (racial harassment). This court will join this consensus of emerging law and permit plaintiff to present this claim to a jury.

■ Defendant Miles also contends that plaintiff has failed to produce evidence to establish the requisite elements of the common law tort of intentional or negligent infliction of emotional distress. The court disagrees.

■ In order to recover, plaintiff must show that defendants' conduct was "extreme or clearly outrageous." *Garvey*, 761 F.Supp. at 1190 (quoting *Andrews v. Philadelphia*, 895 F.2d 1469, 1487 (3d Cir.1990)). Here, plaintiff has alleged not only that defendant Benninger made suggestive innuendoes, but

that he touched her inappropriately and that because of her unreceptiveness to that conduct he altered the terms and conditions of her employment. The court is satisfied that a jury acting reasonably could find such conduct sufficiently establishes this claim.

### 2. PHRA—Exhaustion of Administrative Remedies

■ Defendant Miles next argues that plaintiff has failed to exhaust her administrative remedies with the Pennsylvania Human Relations Commission ("PHRC"). Therefore, the court lacks subject matter jurisdiction over plaintiff's PHRA claims. The court disagrees.

[13] A claimant must file a complaint with the PHRC within 180 days after a defendant's alleged discriminatory act. 43 P.S. § 959(a), (h). If within one (1) year after the claimant files a complaint with the PHRC, the PHRC dismisses the complaint or fails to enter into a conciliation agreement, the claimant then has a right to file an action in court. 43 P.S. § 962(c)(1). If a claimant fails to exhaust the PHRC remedies in this manner, he can not bring an action in court. *See Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989); *Schweitzer v. Rockwell Int'l,* 402 Pa.Super. 34, 586 A.2d 383 (1990).

■ Generally, a claimant must file an initial complaint with PHRC in order to secure its remedies. PHRC and EEOC, however, have a work sharing agreement that requires them to divide responsibility for initially processing complaints. Accordingly, each agency has waived its right to initially review claims that are first filed with the other agency. When a claimant files a verified complaint with EEOC, EEOC, in accordance with the work sharing agreement, will transmit a copy of the complaint to PHRC. When EEOC transmits the complaint to PHRC, then the claimant has complied with the filing requirements of the PHRA and does not need to file a separate complaint with PHRC. *Vincent v. Fuller Co.,* 532 Pa. 547, 616 A.2d 969, 971 (1992); *Lukus v. Westinghouse Elec. Corp.,* 276 Pa.Super. 232, 419 A.2d 431, 452 (1980).

Instantly, the record establishes that EEOC transmitted plaintiff's EEOC charge to PHRC with a standard form cover letter on August 5, 1992. The form letter indicated that pursuant to the work sharing agreement, EEOC would initially process the charge. Thus, under the principles articulated in *Lukus,* plaintiff filed the complaint with PHRC on the date it received a copy of plaintiff's EEOC charge. *See also* 16 Pa. Code 42.14(c). That date would have been on or shortly after August 5, 1992. Because plaintiff filed this suit on September 10, 1993, plaintiff has met the exhaustion prerequisite for her PHRA claim.

Defendant urges a contrary result based principally on the contents of a form letter which appears under PHRC letterhead and bears the name of Homer C. Floyd, PHRC Executive Director. The letter states, in pertinent part:

> The charge, which you have filed with the Equal Employment Opportunity Commission (EEOC), has been sent to the Pennsylvania Human Relations Commission (PHRC).
>
> .    .    .    .    .
>
> IF YOU WISH TO HAVE PHRC, IN ADDITION TO EEOC, PROCESS YOUR CHARGE, YOU MUST CONTACT A PHRC REGIONAL OFFICE IN YOUR AREA WITHIN THIRTY DAYS FROM THE RECEIPT OF THIS LETTER.
>
> .    .    .    .    .
>
> If you do not contact the PHRC within 30 days, your complaint will not be processed by the PHRC and you will lose your rights to relief under Pennsylvania law. Failure to contact the PHRC will not affect your federal rights.
>
> The attached form, "Acknowledgment of Right to File a Complaint", [sic] does not constitute a formal complaint. It apprises you of your rights under Pennsylvania law.

The "Acknowledgment of Right to File a Complaint," to which the letter makes reference, provides in pertinent part:

> I hereby acknowledge that I have received a letter advising me of my right to file a complaint under the Pennsylvania Human

Relations Act. I am aware that I must file with PHRC within 30 days, or else I will lose those rights to relief under state law safeguarded by filing under the Pennsylvania Human Relations Act. I understand that this form is not a formal complaint.

Defendant implies that PHRC mailed this form letter to plaintiff in response to her EEOC complaint. Defendant argues that, according to the form letter, plaintiff must actually file a second formal complaint with PHRC in order to invoke its protection. Because plaintiff failed to do so within the 30 day period, defendant argues that she forfeited her right to relief under the PHRA.

The court is unpersuaded for two reasons. First, the letter is undated, unsigned, and not addressed to plaintiff. Unless the staff at PHRC has abandoned any pretension to the fundamentals of writing a formal business letter, the court finds it unlikely that the letter was issued by PHRC and mailed to plaintiff. In addition, although plaintiff conceded that she signed the attached Acknowledgment, her signature is dated July 30, 1992, a week before EEOC transmitted a copy of her charge to PHRC. Thus, it is impossible for her to have signed the Acknowledgment in response to anything PHRC might have sent to her.

The origin and purpose of this letter remains unclear. The undisputed material facts demonstrate, however, that it was not, as defendant proffers, sent by PHRC to plaintiff in response to her having filed a charge with EEOC. The document is of questionable evidentiary value, and clearly not dispositive of the issue.

Moreover, the substance of the letter conflicts with the opinions of the Pennsylvania courts which, as discussed above, provide that when EEOC transmits a charge to PHRC pursuant to the work sharing agreement, that transmittal sufficiently files the charge with PHRC. The Pennsylvania Superior Court made clear that, under these circumstances, nothing in the PHRA requires a claimant to personally file a second formal complaint with PHRC at all, much less within 30 days after filing a charge with EEOC. *Lukus*, 419 A.2d at 452.

Finally, PHRC retains the discretion to accept nonconforming complaints. Title 16 of the Pennsylvania Administrative Code provides, in part, that nonconforming PHRA complaints will nonetheless be considered filed on the date received by PHRC. 16 Pa.Code § 42.14(d). The section also provides that PHRC may quash a nonconforming complaint if "[p]rior to quashing the complaint, the Commission ... notif[ies] the complainant, in writing, and ... provide[s] an opportunity to explain why the complaint should not be quashed under this section." *Id.*

Defendant has failed to produce evidence that PHRC quashed plaintiff's complaint or notified plaintiff, in writing, of its intent to do so, or gave plaintiff an opportunity to explain why the complaint should not be quashed. Apparently, PHRC chose to accept plaintiff's complaint as transmitted from EEOC and it remained a viable complaint when plaintiff filed this suit. Plaintiff has done all the Pennsylvania courts require of her to exhaust the remedies available under the PHRA.

### 3. *Continuing Violation*

Defendant Miles also contends that plaintiff complains of several unlawful acts which occurred outside the statutory period. This is correct, however, plaintiff is proceeding on the "continuing violation theory." The continuing violation theory allows a plaintiff to recover for discriminatory conduct that occurred outside the limitations period, if she can show that the conduct is a part of an ongoing practice or pattern of discrimination.

The court is satisfied plaintiff has placed sufficient evidence on the record by which a jury, acting reasonably, could conclude that the discriminatory acts in question evidence a pattern of harassment sufficient to establish a continuing violation.

### IV. *CONCLUSION*

Based upon the foregoing reasons defendant Benninger's motion for partial summary judgment on individual liability under Title

VII and PHRA [Counts I & III] is granted. All other motions are denied.