Howard RANDOLPH, Jr., Plaintiff,

v.

COOPER INDUSTRIES, Cooper Power Systems Division, William E. Lancaster, Geoffery Hodge, and Donald Yeager, Defendants.

Civ. A. No. 93–1813.

United States District Court, W.D. Pennsylvania.

Dec. 7, 1994.

Howard Randolph, Jr., Verona, PA, pro se.

Buchanan Ingersoll, Paul J. Corrado, Pittsburgh, PA, for defendants.

## *OPINION*

AMBROSE, District Judge.

Plaintiff Howard Randolph, Jr. ("Randolph") has filed this *pro se* action seeking damages and injunctive relief against his employer, Cooper Industries, Inc., Cooper Power Systems Division ("Cooper"), and against individual defendants William C. Lancaster, Geoffery Hodge, and Donald Yeager for alleged incidents of racial harassment at work. Randolph claims violations of Title VII of the Civil Rights Acts of 1964, the Civil Rights Act of 1991, and 42 U.S.C. § 1981. Pending before the Court is a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment filed on behalf of Cooper and the individual defendants pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure. For the following reasons, Summary Judgment will be granted in part and denied in part.

### I. *FACTUAL BACKGROUND.*

Randolph is an African American employed as a "coremaker" at Cooper's plant in Canonsburg, Pennsylvania.[1] In his Complaint, Randolph claims that on November 29, 1992, his supervisor, Defendant Donald Yeager, tampered "with [his] computer to cause machine to produce wrong product." (Compl. at II.) Randolph also alleges that his supervisor Geoffery Hodge failed to respond to his complaints of alleged discriminatory incidents involving a black "M.C. Hammer" doll placed near his workstation. (Compl. at II.)[2]

---

1. Although neither the Complaint nor any other pleading filed to date actually states that Randolph is an African American, the facts as alleged lead the Court to this conclusion.

2. Although not alleged in the Complaint, Randolph apparently asserts that other incidents of racial harassment have occurred at the plant, including an offensive racial slur written on his time card and statements made by Hodge which

Randolph, as a production worker at the Cooper plant in Canonsburg, is represented by the United Steelworkers of America, Local 3968. Steelworkers Local 3968 has negotiated and entered into collective bargaining agreements with Cooper, the most recent of which went into effect on October 21, 1991 and expires on October 20, 1995 ("Labor Agreement"). (Lancaster Aff. ¶ 7.)

Randolph, as a union employee, is bound by the terms of the Labor Agreement. Section 6 of the Labor Agreement, entitled "Grievance Procedure," provides for a mandatory grievance and arbitration procedure for any "complaint or request of an employee or the Union which involves the interpretation or application of, or compliance with, the provisions of" the Labor Agreement. Labor Agreement at 39, ¶ 59. The Labor Agreement also contains a boilerplate antidiscrimination clause, which states:

> It is the continuing policy of the Company and the Union that the provisions of this Agreement shall be applied to all employees without regard to race, color, religious creed, sex, national origin, age, physical or mental handicap, or because an employee is a disabled veteran or a veteran of the Vietnam era.

Labor Agreement at 5, ¶ 8.

Although Randolph advised his supervisors of the alleged harassment and even filed a civil rights complaint against Cooper with the Union concerning the allegations of racial harassment, Randolph did not file a formal grievance and did not use the mandatory grievance/arbitration remedies provided for in the Labor Agreement.

Defendants contend the Court lacks subject matter jurisdiction over this action because Randolph, a union employee, failed to exhaust the mandatory grievance procedures under the Labor Agreement. Defendants also contend that summary judgment must be granted against the individual defendants because as a matter of law, Title VII does not provide for personal liability against an individual but only for liability against an employer. Finally, Defendants contend that

Randolph considered to be "offensive and derog-

the Complaint fails to state a claim against Defendant William Lancaster.

## II.  *LEGAL STANDARD.*

Rule 12(b) of the Federal Rules of Civil Procedure provides that if, on a motion to dismiss, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.Proc. 56. Because Defendants' Motion requires us to consider the Labor Agreement in rendering a decision, we will treat the Motion as one for summary judgment as provided in Fed.R.Civ.Proc. 56.

Rule 56 mandates the entry of summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Material, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990).

## III.  *DISCUSSION.*

A.  *Failure to Exhaust Mandatory Grievance Procedure.*

■ Defendants contend that because the Labor Agreement contains both an antidiscrimination provision and a mandatory grievance and arbitration procedure, Randolph was required to use the procedures set forth in the Labor Agreement prior to bringing his claims to federal court. Defendants argue that under the case law articulated in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) and more recently in *Austin v. Owens–Brockway Glass Container, Inc.,* 844 F.Supp. 1103 (W.D.Va.1994) and *Crawford v. West Jersey*

atory." (Pl.Resp. and Br.Opp. at 5.)

*Health Systems,* 847 F.Supp. 1232 (D.N.J. 1994), Randolph's failure to use the formal grievance procedure precludes him from bringing his statutory claims in federal court, and his action must therefore be dismissed. We disagree.

*Gilmer* involved a plaintiff who had agreed in his employment application "to arbitrate any dispute, claim or controversy" arising between him and his employer. *Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650. After he was dismissed, the plaintiff sued his former employer in federal court alleging violations of the Age Discrimination in Employment Act ("ADEA"). The Supreme Court found that the employment agreement at issue required the arbitration of not only contractual but also statutory claims and that the plaintiff was therefore barred from bringing his ADEA action. Courts have applied the principles articulated in *Gilmer* to also preclude Title VII claims in cases involving employees who agree to arbitrate employment disputes with their employers. *See, e.g., Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.* 956 F.2d 932, 935 (9th Cir.1992); *see also Hirras v. National R.R. Passenger Corp.,* 10 F.3d 1142, 1146–1148 (5th Cir.1994) (Title VII claim arising out of terms and conditions of employment between railroad employee and employer was subject to mandatory arbitration provisions of the Railway Labor Act.)

We find, however, that the facts of this case fall more squarely under another line of Supreme Court precedent beginning with the decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Alexander,* the Court permitted a union employee who had exhausted grievance procedures under a collective bargaining agreement to bring a Title VII claim in federal court, even though the last step of the grievance procedure had provided for final and binding arbitration and the outcome of the arbitral procedure was unfavorable to the plaintiff. In holding that collective bargaining agreements do not require employees to submit statutory claims to grievance procedures, the Court made clear that contractual disputes arising out of the collective-bargaining agreement itself are distinct and separate from an employee's statutory rights. *Alexander,* 415 U.S. at 49–50, 94 S.Ct. at 1020–21.

The same holding was reached in subsequent cases involving different statutes, and in each case the Court emphasized that grievance procedures under collective-bargaining agreements protect only contractual rights. *See Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (involving claim under Fair Labor Standards Act); *McDonald v. West Branch,* 466 U.S. 284, 292, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984) (involving claim brought pursuant to 42 U.S.C. § 1983). The Court in the *Alexander* line of cases recognized that collective bargaining is a "majoritarian process" in which the balancing of individual and collective interests might lead a union to sacrifice statutorily granted benefits, and it concluded that this tension between individual and group interests should not be permitted to compromise statutory rights conferred by Congress on individual employees. *See Gardner–Denver,* 415 U.S. at 51, 94 S.Ct. at 1021, *see also Barrentine,* 450 U.S. at 742, 101 S.Ct. at 1445–46.

Nothing in *Gilmer* suggests that the Court abandoned its concern about the inherent conflicts between group goals and individual rights that exist in the give-and-take of the collective bargaining process. In fact, the Court in *Gilmer* clearly distinguished the holding in that case from its holdings in *Gardner–Denver,* *Barrentine,* and *McDonald,* emphasizing that an important concern in those cases not present in *Gilmer* was the "tension between collective representation and individual statutory rights." *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1656–57. Although it is true that *Gilmer* allows employees individually to enter contracts under which they agree to submit statutory claims to arbitration, we believe that the *Alexander* line of authority compels the conclusion that the holding in *Gilmer* should be narrowly construed and should not extend to discrimi-

nation suits arising under labor contracts.[3] Other courts addressing this issue have reached similar conclusions. *See, e.g., Griffith v. Keystone Steel & Wire Co.,* 858 F.Supp. 802, 804 (C.D.Ill.1994); *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141, 147 (D.Conn.1993); *Block v. Art Iron, Inc.,* 866 F.Supp. 380 (N.D.Ind.1994).

Some courts have taken a more limited view of *Alexander/Barrentine/McDonald* and have expanded *Gilmer* to hold that a collective-bargaining agreement could require arbitration of federal statutory claims, if mandatory arbitration of those claims were specifically provided for in the agreement. *See Austin,* 844 F.Supp. at 1106; *Adams v. Burlington Northern R. Co.,* 843 F.Supp. 686, 691 (D.Kan.1994).

Even if we were to adopt this more expansive view of *Gilmer,* a review of the Labor Agreement in this case reveals that, unlike the employment agreement at issue in *Gilmer,* the Labor Agreement does not specifically provide that an employee's statutory discrimination claims are subject to compulsory arbitration. In *Gilmer,* the plaintiff had agreed to arbitrate "any dispute, claim or controversy" arising between him and the defendant "that is required to be arbitrated under the rules, constitutions or by-laws" of the New York Stock Exchange. *Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650. NYSE Rule 347 provided for arbitration of "*[a]ny controversy* between a registered representative and any member or member organization *arising out of the employment or termination of employment* of such registered representative." *Id.* (emphasis added). The Court construed this language to conclude that the employment agreement specifically provided for compulsory arbitration of Gilmer's ADEA claim. *Id.*

While the language of the employment agreement itself in *Gilmer* compelled the conclusion that statutory claims fell within the ambit of the mandatory arbitration provision, we find that the Labor Agreement in the present case does not compel a similar conclusion. The Labor Agreement here states that its provisions "constitute the sole procedure for the processing and settlement of any claim by an employee or the Union *of a violation by the Company of this Agreement.*" Labor Agreement at 3, ¶ 2 (emphasis added). Moreover, the "Grievance Procedure" outlined in the Labor Agreement defines "grievance" as a "complaint or request of an employee or the Union which involves the interpretation or application of, or compliance with, the provisions of this Agreement." Labor Agreement at 39, ¶ 59. These provisions indicate that the grievance procedure was intended to apply only to contractual claims concerning violations of the Labor Agreement. Randolph does not assert in his Complaint that Cooper breached the Labor Agreement but rather asserts that the actions of Cooper and its employees violated his rights conferred on him by Congress under Title VII and 42 U.S.C. § 1981, not under the Labor Agreement.[4] As the Supreme Court in *Alexander* noted,

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

*Alexander,* 415 U.S. at 49–50, 94 S.Ct. at 1020–21.

---

**3.** In addition to *Gilmer,* Defendants cite the recent case of *Crawford v. West Jersey Health Systems,* 847 F.Supp. 1232 (D.N.J.1994), in support of its argument that the Court lacks jurisdiction to hear Randolph's statutory claims. *Crawford,* however, involved a physician who had entered into an individual employment agreement with her employer in which she had agreed to arbitrate certain employment disputes. *Crawford* thus fell more squarely under the facts of *Gilmer*

and can be distinguished from both the *Alexander* line of cases and the action at bar.

**4.** We note that while 42 U.S.C. § 1981 relates primarily to racial discrimination in the making and enforcing of contracts, a claim under § 1981 sounds in tort and is based upon a federal statutory rather than contractual duty. *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1255 (10th Cir.1989).

For the reasons discussed above, summary judgment on the grounds of failure to exhaust mandatory grievance procedures under the Labor Agreement must be denied.

### B. *Individual Liability Under Title VII.*

■ Defendants next contend that Defendants Lancaster, Hodge, and Yeager must be dismissed from the case because individual defendants cannot be held personally liable for damages under Title VII, citing *Miller v. Maxwell's International, Inc.*, 991 F.2d 583 (9th Cir.1993), in support of their argument. Neither the United States Supreme Court nor the Third Circuit Court of Appeals has addressed the issue of whether an individual supervisor can be held personally liable under Title VII for racial harassment in the workplace, and our research reveals that there is a split of opinion among the circuits on this issue. The Courts of Appeals in both the Fifth and Eleventh Circuits have joined the Ninth Circuit Court of Appeals in *Miller* in holding that Title VII does not allow for personal liability of individual supervisors. *See Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991). On the other hand, the Courts of Appeals in the Fourth and Sixth Circuits have allowed personal liability to be imposed against individuals who are not otherwise "employers" for violations of Title VII. *See Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989); *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986). Even the district courts within our own circuit have failed to reach a consensus on this issue. *Compare Barb v. Miles, Inc.*, 861 F.Supp. 356, 359 (W.D.Pa.1994) (no personal liability) with *Doe v. William Shapiro, Esq., P.C.*, 852 F.Supp. 1246, 1252–53 (E.D.Pa.1994) (allowing personal liability).

The term "employer" under Title VII is defined to include any agent of the employer. 42 U.S.C. § 2000e(b). Thus, those courts that have imposed personal liability on individual defendants have strictly read the statutory language to conclude that supervisory personnel and other agents of the employer are themselves "employers" for purposes of liability. Although this argument has some merit, we are persuaded that the better view is that supervisors and coemployees cannot be held personally liable under Title VII. We note that another member of this Court, District Judge Gary Lancaster, recently decided that Title VII does not allow for personal liability against an individual defendant. *See Barb*, 861 F.Supp. at 359. We concur with Judge Lancaster that by including the agency provision in the statute, Congress only intended to insure that employers sued under Title VII would be subject to the doctrine of respondeat superior. *Id.; see also Miller*, 991 F.2d at 587. We also agree that it is logically inconsistent to conclude that Congress intended to exclude small businesses that employ less than fifteen people from liability, yet "intended to impose personal liability on a sole individual who is not an employer at all." *Barb*, 861 F.Supp. at 359. Moreover, if we accept a strict construction of Title VII's statutory language, we would be forced to impose personal liability on individuals who had the misfortune to be employed by a large employer while exempting from liability those individuals who were lucky enough to work for a small business.[5] We find it highly unlikely that Congress would have intended such a result.

■ For these reasons, therefore, summary judgment will be granted as to Randolph's Title VII claims asserted against Defendants Lancaster, Hodge and Yeager. We note that Defendants Hodge and Yeager, however, are still parties to this action because Randolph has also asserted a claim against these Defendants for violations of his civil rights pursuant to 42 U.S.C. § 1981. It is well-settled that an individual, including an agent of a corporation, may become personally liable "when they intentionally cause an infringement of rights protected by Section 1981." *Al–Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir.1986).

■ Defendant Lancaster, however, is a different matter. Defendants contend that the Complaint fails to state any claim against

---

**5.** The exact language of Title VII provides that "the term 'employer' means a person ... who has fifteen or more employees ... and any agent of such person." 42 U.S.C. § 2000e(b) (emphasis added).

Defendant Lancaster, and we agree. Except for the caption, Randolph has failed to even mention Lancaster's name in the Complaint, let alone set forth what actions taken by Lancaster infringed his civil rights under 42 U.S.C. § 1981. We will accordingly dismiss Lancaster from this action.

We are aware that Randolph is proceeding *pro se,* and we will therefore allow him to amend his Complaint to assert a claim against Lancaster, if he believes one exists. We emphasize that, given our decision today, Randolph may not assert a Title VII claim against Defendant Lancaster. Randolph should therefore briefly set forth the actions taken by Lancaster that Randolph believes violated his civil rights under 42 U.S.C. § 1981. Any Amended Complaint should be filed within 15 days of the date of the Order accompanying this Opinion.

## IV. *CONCLUSION.*

Summary judgment will be granted on the Title VII claims asserted against Defendants Lancaster, Hodge and Yeager. Defendant Lancaster will be dismissed from this action, but Randolph will have 15 days to amend his Complaint to assert a claim against Lancaster under 42 U.S.C. § 1981, if he wishes to do so. Defendants' Motion for Summary Judgment on the grounds of failure to exhaust mandatory grievance procedures will be denied.