

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-1997

# Martin v. Dana Corp

Precedential or Non-Precedential:

Docket 96-1746

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Martin v. Dana Corp" (1997). *1997 Decisions.* Paper 145.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/145

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 12, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1746

KEEFE M. MARTIN

v.

DANA CORPORATION

Keefe Martin,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 95-cv-08024)

Argued April 15, 1997

BEFORE: SCIRICA, COWEN and NYGAARD <u>Circuit Judges</u>

(Filed June 12, 1997)

Kingsley A. Jarvis, Esq. (argued)
Suite 903
One Montgomery Plaza
Norristown, PA 19401

 Counsel for Appellant

Scott F. Cooper, Esq. (argued)
Blank, Rome, Comisky & McCauley
1200 Four Penn Center Plaza
Philadelphia, PA 19103

 Counsel for Appellee

**OPINION OF THE COURT**

COWEN, Circuit Judge.

Appellant, Keefe Martin, appeals the July 26, 1996, order of the district court dismissing his complaint with prejudice. The district court held that Section 118 of the Civil Rights Act of 1991 and the provisions of the collective bargaining agreement between Martin's union and his employer, appellee Dana Corporation Parish Division (Dana), bar Martin from bringing his discrimination claim in federal court. The collective bargaining agreement between Dana and the union provides that both the employee and the union retain the individual right to demand arbitration. Based on the language of the collective bargaining agreement, we hold that Martin is required to arbitrate his discrimination claim pursuant to the grievance procedure set forth in that agreement.

I.

Dana manufactures light industrial products. Keefe Martin, a Dana employee, has been a welder in Dana's Reading, Pennsylvania facility since September 13, 1983. In 1993, Martin filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against Dana and a lawsuit against Dana, his union (the United Steelworkers of America, Local 3733), and various Dana managers and union officers alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1994), and 42 U.S.C. § 1981 (1994). Specifically, he alleged that after returning to work following an injury, he was restricted from light duty work because he is African-American. In early 1995, after discovery, motions for summary judgment by all the defendants, and extensive settlement discussions, Martin signed a stipulation voluntarily dismissing his action with prejudice.

Less than four months later, Martin filed a second charge of discrimination with the EEOC against Dana. This charge

similarly alleged improper assignments within the restricted duty program due to Martin's status as an African-American. The EEOC issued Martin a right-to-sue letter, and Martin again filed suit against Dana, along with a motion for appointment of counsel. The district court granted Martin's motion for appointment of counsel, and Martin's attorney filed an amended complaint on his behalf.

In response to the amended complaint, Dana filed a motion to dismiss pursuant to FED.R.C IV.P 12(b)(6). Dana argued that Martin's suit should be dismissed for his failure to arbitrate his claims under the 1994 collective bargaining agreement between Dana and the Union. Article 1, Section 3 of that agreement provides:

Any and all claims regarding equal employment opportunity provided for under this Agreement or under any federal, state or local fair employment practice law shall be exclusively addressed by an individual employee or the Union under the grievance and arbitration provisions of this Agreement.

Appellant's Br. App. at 85. The district court granted Dana's motion and dismissed Martin's claim with prejudice. The district court's order contained a footnote explaining the reasoning for its decision. The footnote stated in full:

This is a question of first impression in this Circuit. Section 3 of the Collective Bargaining Agreement applicable to plaintiff expressly requires arbitration of all types of employment claims. Under Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011 (1971), such a clause would not bar this suit. Since Alexander, Congress has amended Title VII of the Civil Rights Act to provide for alternate dispute resolution in Section 118 of the Civil Rights Act of 1991, P.L. 102-166, 105 Stat. 108. Although codified at 42 U.S.C. Section 1981A,1 Section 118 applies to Title VII. In our view, this amendment and the provisions of the Collective Bargaining Agreement bar this suit. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct.

_____

1. Section 118 is actually not codified but is set out as a note under section 1981.

3

1647 (1991); <u>Austin v. Owens-Brockway Glass Container, Inc.</u>, 78 F.3d 875 (4th Cir. 1996).

<u>Martin v. Dana Corp.</u>, No. 95-8024, slip op. at 1 n.1 (E.D. Pa. July 26, 1996).

II.

Both parties contend that the appropriate standard of review is plenary based on the fact that we are reviewing a grant of summary judgment. However, the July 26, 1996, order of the district court from which Martin appeals states that the district court granted Dana's motion to dismiss pursuant to FED.R.CIV.P 12(b)(6), not pursuant to FED.R.CIV.P 56. <u>Id.</u> at 1. Rule 12(b) provides that if, on a motion to dismiss under Rule 12(b)(6),

matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED.R.CIV.P 12(b). "It is . . . well-established that prior to converting a motion to dismiss into a motion for summary judgment, the district court must provide adequate notice to the parties." <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 578 (3d Cir. 1996)(citing <u>Rose v. Bartle</u>, 871 F.2d 331, 342 (3d Cir. 1989)). Nowhere in the record is it suggested that the district court converted Dana's motion to dismiss into a motion for summary judgment. The district court's terse July 26, 1996, order does not indicate that it considered any documents outside of the pleadings in the course of disposing of Dana's motion to dismiss. Accordingly, we are reviewing a grant of a motion to dismiss, not a grant of a motion for summary judgment.

While the standard of review is still plenary, <u>Rose</u>, 871 F.2d at 342, the test is not whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving parties [are] entitled to a judgment as a matter of law."

4

Appellant's Br. at 10 (citing Chipollini v. Spencer Gifts Inc., 814 F.2d 893 (3d Cir. 1987)). Instead, the proper inquiry is:

[W]hether taking the allegations of the complaint as true, . . . and viewing them liberally, giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom, . . . "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle them to relief."

Gluck v. Unisys Corp., 960 F.2d 1168, 1175 (3d Cir. 1992)(quoting Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir. 1977)(alteration in original) (citations omitted)).

III.

In this appeal we are presented with an issue offirst impression for the Third Circuit. Actually, given the precise factual situation with which we are dealing (an arbitration clause in a collective bargaining agreement under which either the employee or the union can compel arbitration), it appears that this case may be different from all of the relevant cases previously addressed by the other courts. We embark on our analysis by surveying these earlier related cases.

We begin with a unanimous United States Supreme Court decision upon which Martin heavily relies, Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011 (1974). In Alexander, a black employee brought a Title VII suit against his employer. The employee was a member of a bargaining unit represented by a union that had a collective bargaining agreement with the employer. Prior to the commencement of the Title VII suit and pursuant to the grievance procedure set forth in the collective bargaining agreement, the union brought the employee's claim to arbitration. The arbitrator determined that the employee "had been `discharged for just cause.' " Id. at 42, 94 S.Ct. at 1017. The employer contended that the employee's prior submission of the claim to final arbitration precluded the Title VII suit.

The Supreme Court disagreed and held that "Title VII's purpose and procedures strongly suggest that an individual

5

does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." Id. at 49, 94 S.Ct. at 1020. In other words, "a person may sue under Title VII notwithstanding that he has submitted his claims to arbitration under a collective bargaining agreement and lost." Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 886 (4th Cir. 1996) (Hall, J., dissenting)(citing Alexander, 415 U.S. 36, 94 S.Ct. 1011 (1974)). The Court further stated that "there can be no prospective waiver of an employee's rights under Title VII." Alexander. 415 U.S. at 51, 94 S.Ct. at 1021. The Court explained that because Title VII "concerns not majoritarian processes, but an individual's right to equal employment opportunities," such rights "can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII." Id. at 51, 94 S.Ct. at 1021 (emphasis added). The Court continued, "[i]n these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver." Id. at 51-52, 94 S.Ct. at 1021. (citing Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182 (1953)). The Court's holding is grounded in the distinction between disputes arising from the collective bargaining agreement itself and disputes concerning an employee's statutory rights.

After Alexander, the Supreme Court continued to rely on this crucial distinction. See McDonald v. City of West Branch, 466 U.S. 284, 292, 104 S.Ct. 1799, 1804 (1984) (involving claim brought under 42 U.S.C. § 1983); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 101 S.Ct. 1437 (1981) (involving claim under Fair Labor Standards Act). In both of these cases the Court emphasized that grievance procedures under collective bargaining agreements protect only contractual rights. See id. Just as in Alexander, in these cases the Court expressed its concern that the "majoritarian" nature of the collective bargaining process "in which the balancing of individual and collective interests [occurs,] might lead a union to sacrifice statutorily granted benefits." Randolph v. Cooper Indus., 879 F. Supp. 518, 521 (W.D. Pa. 1994) (citing Alexander, 415 U.S. at 51, 94 S.Ct. at 1021 and Barrentine, 450 U.S. at 742, 101 S.Ct. at 1445-46); see also McDonald,

6

466 U.S. at 291, 104 S.Ct. at 1803. The Court "concluded that this tension between individual and group interests should not be permitted to compromise statutory rights conferred by Congress on individual employees." Randolph, 879 F. Supp. at 521 (citing Alexander, 415 U.S. at 51, 94 S.Ct. at 1021 and Barrentine, 450 U.S. at 742, 101 S.Ct. at 1445-46).

Leaving Alexander and its progeny, we next turn to the other major case in this area -- the case upon which Dana places great importance, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647 (1991). As part of his employment, the plaintiff in Gilmer registered as a securities representative with several stock exchanges including the New York Stock Exchange (NYSE). In his registration statement with the NYSE, the employee "`agree[d] to arbitrate any dispute, claim or controversy' arising between him and [his employer]." Gilmer, 500 U.S. at 23, 111 S.Ct. at 1650 (first alteration in original).

The employee was fired at the age of 62. He then brought suit in federal court, alleging that his employer terminated his employment because of his age, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq. (1985). The employer filed a motion to compel arbitration of the ADEA claim. The Supreme Court held that an ADEA claim "can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application." Gilmer, 500 U.S. at 23, 111 S.Ct. at 1650. The Court stated:

Although all statutory claims may not be appropriate for arbitration, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." In this regard, we note that the burden is on Gilmer to show that Congress intended to preclude a waiver of a judicial forum for ADEA claims. If such an intention exists, it will be discoverable in the text of the ADEA, its legislative history, or an "inherent conflict" between arbitration and the ADEA's underlying purposes. Throughout such an inquiry, it should be kept in mind

7

that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."

Id. at 26, 111 S.Ct. at 1652 (alteration in original)(citations omitted).

The Court concluded that "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." Id. It also found that "compulsory arbitration of ADEA claims pursuant to arbitration agreements [is not] inconsistent with the statutory framework and purposes of the ADEA." Id. at 27, 111 S.Ct. at 1652.

Gilmer did not overrule Alexander. Rather, the Court stated that reliance on Alexander and its progeny was "misplaced" because "[t]here are several important distinctions between the [Alexander] line of cases and [Gilmer]." Id. at 33, 35, 111 S.Ct. at 1656, 1657. First, the Court noted that Alexander and Gilmer involved different issues. The issue in Alexander was "whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims." Id. at 35, 111 S.Ct. at 1657. The issue in Gilmer was "the enforceability of an agreement to arbitrate statutory claims." Id.

Second, and most important to our discussion about the instant case, the Court noted that "because the arbitration in [Alexander and its progeny] occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to [Gilmer]." Id. Specifically, in Alexander the Court was worried about "the potential disparity in interests between a union and an employee." Id.

Finally, the Court placed importance on the fact that Gilmer, unlike Alexander, was "decided under the FAA [Federal Arbitration Act], which . . . reflects a `liberal federal policy favoring arbitration agreements.' " Id. (quoting Mitsubishi Motors Corp. V. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct. 3346, 3353 (1985)).

8

Since Gilmer, courts have repeatedly held that Title VII claims, like ADEA claims, are subject to mandatory arbitration. See, e.g., Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482 (10th Cir. 1994); Nghiem v. NEC Electronic, Inc., 25 F.3d 1437 (9th Cir. 1994); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698 (11th Cir. 1992); Mago v. Shearson Lehman Hutton Inc., 956 F.2d 932 (9th Cir. 1992); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305 (6th Cir. 1991); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229 (5th Cir. 1991). However, only one of these cases arose in the context of a collective bargaining agreement. See Austin, 78 F.3d 875 (4th Cir. 1996). The other cases all involved arbitration clauses in employment contracts and securities registration applications. Thus, out of the above-mentioned cases, Austin is the one closest to the case at hand.

In addition to the above cases, "[t]he language of [Title VII] could not be any more clear in showing Congressional favor towards arbitration [of Title VII discrimination claims]." Id. at 881. The Civil Rights Act of 1991, amending Title VII, provides:

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081. This statutory language certainly undermines the portion of the Supreme Court's Alexander opinion expressing a mistrust of the arbitral process. Further, analyzed under the test set forth in Gilmer, this language demonstrates that Congress did not intend "to preclude a waiver of judicial remedies" for Title VII claims in general. Gilmer, 500 U.S. at 26, 111 S.Ct. at 1652. Nonetheless neither this statutory language nor the Supreme Court's statement in Gilmer that "statutory claims may be the subject of an arbitration agreement," id., specifically speaks to the situation where arbitration is compelled by a collective bargaining agreement. Indeed, an employee subject to an arbitration clause in a collective

9

bargaining agreement where only the union can compel arbitration presents a situation where "compulsory arbitration of [the employee's Title VII] claims . . . would be inconsistent with the statutory framework and purposes of [Title VII]." Id. at 27, 111 S.Ct. at 1652. In such a situation Alexander would control.

In addition to the Fourth Circuit in Austin, two other circuit courts and a few other district courts have addressed the issue of whether an arbitration clause in a collective bargaining agreement can bar an employee from bringing a Title VII claim in federal court. See Pryner v. Tractor Supply Company, 109 F.3d 354 (7th Cir. 1997); Varner v. National Super Market, Inc., 94 F.3d 1209, 1213 (8th Cir. 1996); Almonte v. Coca-Cola Bottling Co. of NY, No. 95-1458, 1997 WL 149328 (D. Conn. Mar. 13, 1997); Bush v. Carrier Air Conditioning, 940 F. Supp. 1040 (E.D. Tex. 1996); Randolph v. Cooper Indus., 879 F. Supp. 518 (W.D. Pa. 1994). In contrast to Austin, all of these cases except Almonte, have held that employees cannot be compelled by a collective bargaining agreement to arbitrate federal statutory discrimination claims. Not surprisingly, the difference in outcome is due to the fact that Austin and Almonte placed emphasis on Gilmer, whereas Pryner, Varner, Bush, and Randolph all viewed Alexander as controlling. Further, whereas Austin did not find importance in whether an arbitration clause appeared in a collective bargaining agreement or an employment contract, Pryner and the other cases found the difference dispositive. In addition, the courts in Bush and Randolph emphasized the fact that the language in their particular collective bargaining agreements did not explicitly provide for the mandatory arbitration of statutory discrimination claims. See Bush, 940 F. Supp. at 1046; Randolph, 879 F. Supp. at 522.

Austin held that "[w]hether the dispute arises under a contract of employment growing out of securities registration application, a simple employment contract, or a collective bargaining agreement, an agreement has yet been made to arbitrate the dispute. So long as the agreement is voluntary, it is valid, and we are of opinion it should be enforced." Austin, 78 F.3d at 885. It further stated that the employee in that case was

10

a party to a voluntary agreement to submit statutory claims to arbitration. The collective bargaining agreement specifically lists gender . . . discrimination as [a] claim[ ] that [is] subject to arbitration. This voluntary agreement is consistent with the text of Title VII . . ., the legislative intent behind [that] statute[ ], and the purpose[ ] of [that] statute[ ].

Id. at 885-86.

Similarly, in a case involving the arbitrability of discrimination claims under 42 U.S.C. § 1981 in the context of a collective bargaining agreement, one court found importance in the fact that "Congress has expressly encouraged arbitration of § 1981 claims." Almonte, 1997 WL 149328, at *5. Almonte held that a "less stringent interpretation of [Alexander] is found to be a more reasonable accommodation of the conflict between vitiating individual statutory rights and enforcing the express terms of a fairly negotiated contract than a per se rule barring enforcement of [collective bargaining agreement-] mandated arbitration of individual statutory claims." Id. at *4.

In contrast to Austin and Almonte, Pryner focused on the "essential conflict . . . between majority and minority rights." Pryner, 109 F.3d at 362. The Seventh Circuit found important the fact that "the grievance and arbitration procedure can be invoked only by the union, and not by the worker." Id. The court continued, "[t]he worker has to persuade the union to prosecute his grievance and if it loses in the early stages of the grievance proceedings to submit the grievance to arbitration." Id. It further stated that "we may not assume that [the union] will be highly sensitive to [minority workers'] special interests, which are the interests protected by Title VII and the other discrimination statutes and will seek to vindicate those interests with maximum vigor." Id. at 362-63.

In the instant appeal we are presented with a case that appears to be different from all of the above related cases. This case involves an arbitration clause under which both the employee and the union can compel arbitration. At oral argument, the parties agreed that in Pryner the employee did not have the right to initiate the arbitration. However,

11

they suggested that, like the instant case, Austin and Varner also involved situations where the employee could arbitrate at his election as well as the election of the union. This factual assertion is not evident from either the district or appellate opinions of those cases. Therefore, in view of this distinguishing fact, the instant case is more compelling than Austin, which did not differentiate between arbitration clauses in collective bargaining agreements and arbitration clauses in employment contracts.2

Moreover, this case is distinguishable from Pryner and the other cases that have adhered to a strict reading of Alexander. Because Martin, as an employee, does not need "to persuade the union to prosecute his grievance and . . . submit [his] grievance to arbitration," Pryner, 109 F.3d at 362, there is not the same "tension between individual and group interests." Randolph, 879 F. Supp. at 521. Thus, there is not a concern about a "potential disparity in interests between [the] union and [the] employee." Gilmer, 500 U.S. at 35, 111 S.Ct. at 1657. For these reasons, in this specific situation where the individual employee can compel arbitration, Gilmer, not Alexander, should control.

We note that another determinative factor in our decision-making is the fact that the language of the collective bargaining agreement in this case explicitly provides for the mandatory arbitration of statutory discrimination claims. Article 1, Section 3 of the agreement provides:

Any and all claims regarding equal employment opportunity provided for under this Agreement or under any federal, state or local fair employment practice law shall be exclusively addressed by an individual employee or the Union under the grievance and arbitration provisions of this Agreement.

_____

2. If the parties' assertion about the employees' ability to initiate arbitration under the collective bargaining agreements in Austin and Varner is correct, our opinion is not affected in any way. Neither Austin nor Varner commented on what we find to be the critical distinguishing factor -- the employee's ability individually to initiate arbitration. Therefore, although the outcome of this case is akin to that in Austin, we arrive at the same conclusion by utilizing different reasoning.

12

Appellant's Br. App. at 85 (emphasis added). We find that the language requiring compulsory arbitration of Title VII-type claims, along with the language giving "an individual employee" the right to initiate the grievance and arbitration process, drives our result in this case.

IV.

The district court was correct in finding that Martin's suit was barred by the arbitration clause in the collective bargaining agreement. We will affirm the district court's July 25, 1996, order granting Dana's motion to dismiss the complaint.

SCIRICA, <u>Circuit Judge</u>, Dissenting.

There are few current issues in federal labor law more central than the one presented in this case: whether a collective bargaining agreement can compel the arbitration of a federal Title VII discrimination claim.

But for Martin's right to initiate and prosecute his grievance without union approval, this case would present an irreconcilable conflict between individual and group interests. This was the situation faced by the Court of Appeals for the Seventh Circuit in <u>Pryner v. Tractor Supply Co.</u>, 109 F.3d 354 (7th Cir. 1997), <u>petition for cert. filed</u>, 65 U.S.L.W. 2622 (U.S. May 16, 1997)(No. 96-1830), and decided in favor of the employee.1 Nevertheless, the issue here remains whether a union can waive Martin's statutory rights in a collective bargaining agreement that specifically provides that arbitration is the exclusive remedy for equal employment opportunity claims.

The answer, it seems to me, in large part depends on the continued vitality of the Supreme Court's decision in <u>Alexander v. Gardner-Denver Co.</u>, 4l5 U.S. 36, 51 (1974)("[W]e think it clear that there can be no prospective waiver of an employee's rights under Title VII."). "Title VII . . . concerns not majoritarian processes, but an individual's right to equal employment opportunities. . . [and] waiver of these rights would defeat the paramount congressional purpose behind Title VII." <u>Id.</u> Until the Supreme Court signals otherwise, I am reluctant to hold that a collective bargaining agreement may preclude an individual from exercising his statutory civil rights.

Martin contends he is entitled to pursue independently (and perhaps collaterally) his statutory rights under Title VII. Despite his right to initiate grievance proceedings, Martin contends that enough tension exists between his interests and those of the union (and other employees) that he should not be held to have waived his statutory rights. Of particular significance in this case alleging racial

_____

1. <u>But see Austin v. Owens-Brockway Glass Container, Inc.</u>, 78 F.3d 875 (4th Cir.) (unclear whether employee could initiate arbitration), <u>cert. denied</u>, 117 S. Ct. 432 (1996).

14

discrimination is that Martin is one of 75 African-Americans in the 2,300 member Local 3733 Union. It would appear, therefore, that the tension between individual and collective rights spills over to a tension between racial minority and majority rights.2

For these reasons, the Supreme Court's decision in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), is not especially helpful here. As an individual, Gilmer agreed to arbitrate all future employment claims. Consequently, Gilmer did not address the majoritarian concerns discussed in Alexander.

The question remains whether Congress' 1991 amendment to Title VII encouraging arbitration where appropriate and to the extent authorized by law, permits a collective bargaining unit to prospectively waive an individual member's rights to select a federal judicial forum. Civil Rights Act of 1991, Pub.L. No. 102-166, 195 Stat. 108, § 118. If Congress intended to allow such a waiver, it did not explicitly say so. Moreover, it is questionable to assume that in the 1991 Amendments, Congress provided civil rights plaintiffs with a right to trial by jury in one section, and then severely limited that right in another. See Pryner, 109 F.3d at 363. Also it may be significant that Alexander was not listed in the legislative history among the cases affected by § 118. See H.R. Rep. No. 102-40(I) at 97 (1991), reprinted in 1991 U.S.C.C.A.N. 549.

When an individual worker agrees to arbitrate an employment discrimination dispute, it must be submitted to an arbitrator. But absent individual consent, the

---

2. The Pryner court observed that while "the collective-bargaining agreement is the symbol and reality of a majoritarian conception of workers' rights," such ideas do not belong in the context of "[t]he statutory rights at issue in these two cases [which] are rights given to members of minority groups because of concern about the mistreatment (of which there is a long history in the labor movement . . .) of minorities by majorities." Pryner, 109 F.3d at 362 (citations omitted).

15

There are strong policy reasons weighing for and against the arbitration of federal discrimination claims. But these choices rest with Congress.

For these reasons, I respectfully dissent.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

3. See Deborah Patterson v. Tenet Healthcare, Inc., ___ F.3d ___, No. 96-2587, 1997 WL 236237, at *5 (8th Cir. May 12, 1997) ("Accordingly, we have held that arbitration agreements contained within a [collective bargaining agreement] do not bar civil claims under Title VII".). employee retains his right to statutory relief. See Alexander, 415 U.S. 36.3

16