Tyrone HUMPHREY, Plaintiff,

v.

COUNCIL OF JEWISH FEDERATIONS,
Defendant.

No. 94 Civ. 5163 (DAB).

United States District Court,
S.D. New York.

Oct. 16, 1995.

Powell & Anderson, New York City (Charles M. Powell, Jr. of counsel), for Plaintiff.

Proskauer Rose Goetz & Mendelsohn, New York City (Richard A. Levin, of Counsel), for defendant.

## MEMORANDUM and ORDER

BATTS, District Judge.

Tyrone Humphrey brings this suit under both Title VII of the Civil Rights Act of 1964, as amended [hereinafter Title VII], 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 against his former employer, Council of Jewish Federations, Inc. ("the Council").

The Council moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). For the reasons stated below, the motion is denied.

### I.  BACKGROUND

Defendant is a not-for-profit corporation based in the state of New York. (Levin Aff. of 10/28/94, ¶ 2; Compl. ¶ 9.) The Council is the coordinating structure of many local federations which raise money for philanthropic and eleemosynary activities. (Levin Aff. of 10/28/94, ¶ 2.) Plaintiff Tyrone Humphrey ("Humphrey"), an African–American citizen of the United States, began working with the Council as a printer in 1976. (Compl. ¶¶ 8, 11.) He was promoted twice—once in 1981 to Assistant Productions Supervisor and again in 1986 to Production Supervisor. (Compl. ¶ 11.) Humphrey worked under a collective bargaining agreement ("the Agreement") between the Council and the District Council 1707, Community and Social Agency Employees Union, AFSCME, AFL–CIO ("the Union"). (Levin Aff. of 10/28/94, ¶ 3.) The Agreement contained provisions relating to the terms and conditions of employment of all employees and to the grievance-arbitration procedure. (Levin Aff. of 10/28/94, ¶ 3.)

On or about October 1, 1990, Humphrey was informed that his position was to be terminated as of January 1, 1991. (Compl. ¶ 12; Levin Aff. of 10/28/94, ¶ 5.) Under the Agreement, Humphrey could opt to assume the job of a less senior employee. (Compl. ¶ 13.) On November 28, 1990, Humphrey notified the Council that he would take this option. (Compl. ¶ 13.) On December 10, 1990, Humphrey was informed by the Council that he would be demoted to the position of the least senior employee in the department; he was also informed that his pay would decrease one salary increment. (Compl. ¶ 13.) Plaintiff alleges that other similarly situated white employees whose positions were retrenched did not have their salaries lowered. (Compl. ¶¶ 14–17; Powell Decl.Ex. A (EEOC Charge of Discrimination no. 160911976) [hereinafter EEOC Complaint].) Finally, in mid–1992, the Council made further employee cutbacks in the department; consequently, Humphrey was dismissed. (Levin Aff. of 10/28/94, ¶ 13; Compl. ¶ 30.)

A series of allegedly discriminatory incidents accompanied these retrenchment proceedings. In November 1990, Humphrey inspected his personnel folder and found three negative letters of which he claims he had not been previously aware. (Compl. ¶ 18.) In addition, on December 10, 1990, the Council issued Humphrey and his co-workers a final warning letter regarding poor work. (Compl. ¶ 18.) Humphrey alleges that these actions are a part of the discrimination he has experienced. (Powell Decl. Ex. B (EEOC Amendment to EEOC Complaint) [hereinafter EEOC Amendment].)

On November 20, 1991, Humphrey asked the Council if he could miss work on November 22nd because he had a doctor's appointment. (Compl. ¶ 21; Humphrey Aff. ¶ 11.c.) Because the Council was having its annual General Assembly that week, (Levin Aff. of 10/28/94, ¶ 10), Humphrey was given a "final warning" letter on November 22, 1991, stating that he would be discharged if he did not show up for work that day. (Compl. ¶ 23; Humphrey Aff. ¶ 11(c).) Humphrey missed his doctor's appointment and attended work on the day in question. (Compl. ¶ 21.)

Furthermore, Humphrey alleges that, "throughout the period of his complaints" and until his dismissal, he was subject to racial harassment by his supervisor; he complained to the Council, which did nothing, (Compl. ¶ 20); he was given job tasks outside his job description, (Compl. ¶ 29); and he was given a bad evaluation on February 29, 1992, (Compl. ¶ 28). It appears that Humphrey is alleging that, despite the fact that some of these incidents may predate the filing of his first EEOC complaint on June 28, 1991, these are all acts of discrimination and retaliation for his filing of an EEOC complaint. (Compl. ¶¶ 19, 20, 23, 31.)

Humphrey filed his first complaint with the EEOC on June 28, 1991. (Compl. ¶ 19.) In this complaint, he alleged that his being informed of the retrenchment and demotion was an act of discrimination in violation of Title VII. (EEOC Complaint.) On September 27, 1991, he filed an amendment to this EEOC Complaint. (Compl. ¶ 19.) In this amendment, he realleged the original charges and added charges about the poor evaluation letters he found in his file in November of 1990. (EEOC Amendment.) He also changed the date of the last act of discrimination to December 10, 1990—the date on which he was informed his salary would be decreased along with his demotion. (EEOC Amendment.) Humphrey made a second amendment to his charges on December 4, 1991. (Compl. ¶ 19.) Instead of filing yet another EEOC amendment, this time he filed with the New York State Division of Human Rights ("NYSDHR") an amendment claiming he was denied his request to go to the doctor as an act of retaliation for filing his original EEOC Complaint. (Powell Decl. Ex. E (NYSDHR Amendment to EEOC Complaint) [hereinafter NYSDHR Amendment].) Humphrey did not add to his charges any claim regarding his final termination in 1992. (Levin Aff. of 10/28/94, ¶ 16.)

Contemporaneous with his EEOC filings, Humphrey was also pursuing Union based options of redress. On December 31, 1990, Humphrey submitted two grievances to Defendant regarding his cut in pay and the objectionable letters in his file. (Humphrey Aff. ¶ 10.) After Defendant had denied the grievances, Humphrey was informed that the arbitrator had rejected the grievances as untimely filed. (Humphrey Aff. ¶ 10; Levin Aff. of 10/28/94, Ex. D.)

On December 17, 1991, Humphrey and two white Union representatives attended an arbitration hearing regarding the salary reduction; Humphrey alleges that he was not paid for time spent at the hearing while the two white representatives were. (Compl. ¶ 27.) Humphrey then filed grievances over this lack of payment and the November 22nd missed doctor's appointment. (Levin Aff. of 10/28/94, Ex. F.) On August 30, 1992, the arbitrator decided against Humphrey on the payment issue, because it was determined that none of the three was paid for the time spent at the arbitration hearing. (Levin Aff. of 10/28/94, Ex. F; Levin Aff. of 1/6/95, ¶ 5.) On the issue of the doctor's appointment, however, the arbitrator ruled that the final warning letter would be removed from Humphrey's file. (Levin Aff. of 10/28/94, Ex. F.)

A final grievance was filed in mid–1992 by the Union regarding the overall reduction. (Def.'s Mem. of Law at 6.) This grievance was denied by an arbitrator on November 30, 1993. (Levin Aff. of 10/28/94, Ex. H.)

In a letter dated April 6, 1994, the NYSDHR dismissed Humphrey's complaint for lack of probable cause. (Levin Aff. of 1/6/95, Ex. C.) Also, on June 22, 1994, the EEOC determined that the evidence did not establish a violation of the statutes. (Levin Aff. of 10/28/94, Ex. I.) Humphrey received a right to sue letter from the EEOC dated May 31, 1994. (Compl. Ex. B.) He then timely filed the instant Complaint with this Court on July 14, 1994.

## II. DISCUSSION

The Complaint in this action alleges only two causes of action: one invoking Title VII and the other invoking 42 U.S.C. § 1981. Crammed within each alleged cause of action, however, is a scatter gun, everything but the kitchen sink array of various alleged wrongful acts on the part of Defendant. Because the Complaint as filed is unintelligible, it will be helpful to summarize Humphrey's various allegations; this will permit the Court to

refer to each allegation in an abbreviated, yet intelligible form.

The first cause of action, invoking the umbrella of Title VII, alleges the following incidents:

1) On October 1, 1990, Humphrey was informed that his position would be retrenched. (Compl. ¶ 12 [hereinafter Title VII retrenchment allegation].)

2) In November, 1990, Humphrey discovered three negative letters in his personnel file which he claims had not previously been brought to his attention. On December 10, 1990, he was issued a final warning letter, and was informed of his reduction in pay and demotion. (Compl. ¶¶ 13–18 [hereinafter Title VII demotion allegation].)

3) "[T]hroughout the period of his complaints," Humphrey claims to have been subject to a racially hostile environment. (Compl. ¶¶ 19–20 [hereinafter Title VII hostile environment allegation].)

4) Humphrey alleges that on November 20, 1991, in retaliation for his EEOC complaints, he was denied leave to attend a doctor's appointment. On November 22, 1991, he was issued another final warning letter, this one in reference to his requested leave. (Compl. ¶¶ 19, 21–23 [hereinafter Title VII doctor's appointment allegation].)

The second cause of action, invoking 42 U.S.C. § 1981, claims that Plaintiff was denied equal terms and conditions of employment, and alleges the following incidents:

1) On December 17, 1991, Humphrey claims he was required to charge an arbitration appearance to vacation time, even though two white union representatives were not similarly penalized. (Compl. ¶ 27.)

2) On February 28, 1992, Humphrey was given a highly negative performance evaluation. (Compl. ¶ 28.)

3) Without stating a specific timeframe, Humphrey claims that he was harassed by being required to perform work outside his job description, by being asked to make coffee and hang pictures, and "other related matters". (Compl. ¶ 29.)

4) On June 30, 1992, Humphrey was notified of his termination to take effect July 1, 1992, and that he would receive bi-weekly salary payments for two months rather than the normal two months notice of termination. (Compl. ¶ 30.)

5) Humphrey alleges that his retrenchment was actually in retaliation for filing his EEOC complaint. (Compl. ¶ 31.)

### A. First Cause of Action: Title VII Claims

#### 1. *Timely Filing with EEOC*

Strict guidelines govern the proper and timely filing of claims under Title VII. *See* 42 U.S.C. § 2000e–5(e)(1). Timely filing of a charge of discrimination with the EEOC is a requirement to filing a Title VII complaint in federal court. Title VII provides that a charge of discrimination filed with the EEOC must be filed within 180 days [1] of the alleged discriminatory act, 42 U.S.C. § 2000e–5(e)(1); in a state with a state fair employment practices agency (in New York, the NYSDHR), Title VII enlarges that time period for filing with the EEOC to 300 days, 42 U.S.C. § 2000e–5(d), but prohibits considering a charge "filed" with the EEOC until 60 days have expired after filing with the state agency, *Mohasco Corp. v. Silver*, 447 U.S. 807, 810, 100 S.Ct. 2486, 2488, 65 L.Ed.2d 532 (1980), or until the state agency terminates its proceedings, by waiver or otherwise, *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 111, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988). Hence, in New York, a filing will always be timely if made with the EEOC within 240 days after the alleged act of discrimination. *See Commercial Office Products*, 486 U.S. at 111, 108 S.Ct. at 1669; *Mohasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16. "If the complainant does not file within 240 days, the charge still may be timely filed with the EEOC if the state or local agency terminates its proceedings before 300 days." *Commercial Office Prod-*

---

1. The limitation period begins to run when the plaintiff knew or should have known of the alleged discriminatory act. *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992).

*ucts,* 486 U.S. at 111–12, 108 S.Ct. at 1669–70.

Neither of Humphrey's first two EEOC complaints (containing his Title VII retrenchment and demotion allegations) were filed within 240 days of the alleged acts of discrimination: Humphrey's first charge was received by the EEOC on June 28, 1991—271 days after the alleged act of discrimination on October 1, 1990; Humphrey's second charge, the amended charge, was received by the EEOC on September 27, 1991—291 days after the alleged act of discrimination on December 10, 1990. Thus, to avoid the addition of sixty days, pursuant to *Mohasco,* for investigation by the NYSDHR (thereby making his filings untimely), Humphrey must look for termination of the state's exclusive jurisdiction. *See Commercial Office Products,* 486 U.S. at 112–13, 108 S.Ct. at 1669–70.

The EEOC and NYSDHR have entered into a worksharing agreement to ease the handling of charges filed with each agency and to eliminate confusion about the filing dates for each agency. Worksharing Agreement between New York State Division of Human Rights and EEOC [hereinafter Worksharing Agreement], Humphrey Aff. Ex. A. The Worksharing Agreement in effect at the time of the filing of Humphrey's charges provides that any charge received by the EEOC will be sent and deferred to the NYSDHR to comply with Title VII's 60 day deferral period requirement. Worksharing Agreement II(b). In recognition of the difficulties raised by the Supreme Court's decision in *Mohasco* for complainants filing between 240 and 300 days, the NYSDHR–EEOC Worksharing Agreement included a waiver provision whereby NYSDHR waived its 60 day exclusive jurisdiction "over all Title VII charges including dual filed charges received between 240 and 300 days after the

date of alleged discrimination." Worksharing Agreement III(f)(6). While this case is not a dual filed charge,[2] use of the word "including" suggests a protected universe beyond dual filed charges. This is further supported by EEOC's post-*Mohasco* efforts to protect EEOC claimants by including jurisdictional waivers in worksharing agreements concluded with individual States. *See Commercial Office Products,* 486 U.S. at 120, 108 S.Ct. at 1673. Because the NYSDHR–EEOC Worksharing Agreement effectively terminated NYSDHR's jurisdiction upon the EEOC's receipt of the charge,[3] each of Humphrey's charges were timely filed with the EEOC within the applicable 300 day period. *See Shumway v. Hendricks,* No. 93–CV–485, 1994 WL 672656, at *2–3 (N.D.N.Y. Nov. 28, 1994) (waiver automatic for dual filed charges filed between 240 and 300 days).

Accordingly, Defendant's motion to dismiss is DENIED with respect to both the Title VII retrenchment allegation[4] and the Title VII demotion allegation.

### 2. *Plaintiff's Hostile Environment Allegation*

■ Defendant moves to dismiss Plaintiff's Title VII allegation of a hostile environment because that claim was not included in any charge filed with the EEOC. (Def.Memo. of Law at 11–12.) Plaintiff does not address this challenge in his papers.

■ A district court has jurisdiction to hear only Title VII claims that are included in or reasonably related to a charge filed with the EEOC. *Butts v. City of New York Dep't of Hous.,* 990 F.2d 1397, 1401 (2d Cir. 1993). A claim that is not included in an EEOC charge must be reasonably related to a timely EEOC allegation for a district court to have jurisdiction over that claim. *Id.* at 1403. There are three circumstances that

---

2. "Dual filed charge" is defined as a "charge[] filed with the [NYSDHR] and forwarded for filing with EEOC." (Worksharing Agreement § II(d).) Because Humphrey's charge was filed directly with the EEOC, not the NYSDHR, it is not a "dual filed charge."

3. While it does not appear that the Second Circuit has yet decided the issue explicitly, worksharing agreement provisions such as this are consistently found to be self-executing, see e.g.,

*Griffin v. City of Dallas,* 26 F.3d 610, 613–614 (5th Cir.1994), and cases cited therein (including cases from the Fourth, Seventh, Eighth, Ninth, and Eleventh Circuits).

4. As indicated above, this shorthand description separates into their constituent components the various acts complained of in the two stated causes of action. Title VII is invoked by Plaintiff in his first cause of action.

satisfy the reasonable relation test: 1) a loose pleading; 2) a retaliation for filing a timely charge; and 3) further incidents carried out in precisely the same manner as those alleged in the EEOC charge. *Id.* at 1402–03. The Complaint appears to allege that the racially hostile environment developed in retaliation for the filing of his EEOC complaints. (Compl. ¶¶ 19, 20.) If proven to be retaliatory, this claim would satisfy the reasonable relation test set forth in *Butts.* 990 F.2d at 1402–03. Defendant's motion to dismiss the Title VII hostile environment allegation is therefore DENIED.

### 3. *Plaintiff's Doctor's Appointment Allegation*

■ As to Humphrey's Title VII doctor's appointment allegation, the Defendant admits that Plaintiff filed this charge with the EEOC in a timely manner, but seeks to have any claim based on that allegation dismissed as moot. Defendant claims such a charge is moot because the final warning letter that resulted was later removed from Humphrey's personnel file pursuant to an arbitration award in Humphrey's favor. Whether the letter was removed from Humphrey's personnel file is not apparent from the face of the Complaint; accordingly, dismissal of this claim on a motion to dismiss is not appropriate.

### B. Plaintiff's Second Cause of Action: Section 1981

#### 1. *Statute of Limitations*

■ New York's three year statute of limitations applicable to personal injury claims applies to claims under 42 U.S.C. § 1981. *Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.1990), *cert. denied,* 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149; *Nurse v. City of New York,* 735 F.Supp. 69, 71 (S.D.N.Y.1990). All the allegations contained in Plaintiff's second cause of action appear to relate to actions taken after December 1991. The Complaint in this action was filed on July 14, 1994. Accordingly, any § 1981 claim based on actions after July 14, 1991 are timely. By this standard, all of the allegations comprising Plaintiff's second cause of action, specifically paragraphs 27 through 31, appear to be

timely. Defendant's motion to dismiss the second cause of action as barred by the statute of limitations is DENIED.

### 2. *Prior Arbitration's Effect on Title VII and § 1981 Allegations*

■ Arbitration hearings stemming from a collective bargaining agreement do not preclude bringing a federal civil rights claim. The Supreme Court has ruled explicitly that Title VII rights protecting an individual from discrimination in employment are not precluded from being remedied in federal court after a final arbitration decision has been awarded under a collective bargaining agreement. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The reasoning behind this rule is that "Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices.... The actual submission of petitioner's grievance to arbitration in the present case does not alter the situation." *Id.* at 51–52, 94 S.Ct. at 1020–21. Furthermore, while "courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 737, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981). Courts in this circuit have reiterated this rule, reasoning that "[c]ontractual rights under a collective bargaining agreement are legally independent from statutory rights under Title VII." *Frank v. New York State Elec. & Gas,* 871 F.Supp. 167, 172 (W.D.N.Y. 1994).

Defendant Council argues that a more recent Supreme Court case, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), should affect this Court's conclusion on this issue. (Def.'s Mem. of Law at 20.) However, the Second Circuit has held explicitly that *Gilmer* has not changed the validity of *Barrentine* and implicitly that *Gardner–Denver* has remained unchanged as well. *Tran v. Tran,*

54 F.3d 115, 117 (2d Cir.1995). The Supreme Court "made it clear that its holding in Gilmer simply applied to contracts made by employees individually. Consequently, *Gilmer* does not alter or undermine the protection established in *Gardner–Denver* against waiver of individual statutory rights through collective-bargaining agreements." *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 147 (D.Conn.1993).

The Supreme Court has not directly addressed the issue of arbitration's effects on § 1981 claims. However, the reasoning of *Barrentine* and *Gardner–Denver* applies equally to suits brought under § 1981 as to those brought under Title VII. *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 918 (8th Cir. 1986); *Rodgers v. Fisher Body Division*, 739 F.2d 1102, 1105 (6th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985); *Strozier v. General Motors Corp.*, 635 F.2d 424, 425–26 (5th Cir.1981) (per curiam); *Green v. United States Steel Corp.*, 481 F.Supp. 295, 302 (E.D.Pa.1979); *McMiller v. Bird & Son, Inc.*, 376 F.Supp. 1086, 1088 (W.D.La.1974).

Thus, Defendant's arguments that Humphrey's causes of action that have been decided adversely in arbitration should be barred from being brought in federal court and should thus be dismissed have no merit. Humphrey's negative arbitration awards do not preclude him from bringing an action in federal court involving the identical set of facts and issues. Therefore, this Court has subject matter jurisdiction over Plaintiff's Title VII doctor's appointment allegation and over the entirety of Plaintiff's second cause of action (§ 1981).

### 3. *Section 1981's Scope After 1991 Amendment*

The only issue left is whether Plaintiff has stated a claim upon which relief can be granted regarding the allegations under § 1981. Section 1981 states that all people "shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court narrowly interpreted this clause and ruled that it only applies to discrimination in contract formation. *Id.* at 179, 109 S.Ct. at 2373. Two years following this decision, Congress responded and amended § 1981. The amendment provided that for the purposes of the section, "the term 'make and enforce contracts' includes the making, *performance*, modification, and termination of contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (emphasis added).

The initial interpretive question for the courts regarding this amendment was whether it applied retroactively. The Supreme Court resolved this question by deciding that the amendment does not apply retroactively. *Rivers v. Roadway Express, Inc.*, —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); *Landgraf v. USI Film Prods.*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Because this holding means that the amendment applies only to alleged acts of discrimination occurring after November 21, 1991, not many cases have been decided interpreting the language of the amendment.

The few cases that have been decided shed some light on the issue—enough to resolve whether Humphrey has stated a claim here. Congress enacted the 1991 amendment with the specific intent to broaden the scope of § 1981 after the Supreme Court's decision in *Patterson*. Pub.L. No. 102–166, § 3(4) (1991). The Second Circuit has detailed that in order to establish a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concern[ing] one or more of the activities enumerated in the statute...." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). Under the amendment, the plain language states that § 1981 applies to the performance of contracts. 42 U.S.C. § 1981(b).

This court has even ruled that a § 1981 "claim based on alleged employment discrimination is evaluated in the same man-

ner as a Title VII claim.... To the extent that plaintiff has stated a valid cause of action under Title VII, he has sufficiently alleged a violation of the substantive portion of Section 1981." *Philippeaux v. North Cent. Bronx Hosp.*, 871 F.Supp. 640, 654 (S.D.N.Y.1994). Thus, section 1981 now covers acts of discrimination which occur in the performance of a contract and not just those that result in a change in the contract relationship. Plaintiff's allegations—that he was not paid properly under his employment contract for appearances at an arbitration proceeding, that he received highly negative performance evaluations, that he was harassed by being required to perform tasks outside his job description, that he received shorter notice of his termination than other employees, and that his termination was in retaliation for his EEOC complaint—all relate to performance of the employment contract between Plaintiff and Defendant. Thus, the second cause of action does state a claim upon which relief can be granted under § 1981 and is properly before this Court.

Accordingly, Defendant's motion to dismiss the second cause of action is DENIED in its entirety.

### III. CONCLUSION

For the reasons stated above, the motion to dismiss the two causes of action contained in the Complaint is hereby DENIED in its entirety.

Nothing in this Memorandum should be interpreted to preclude a motion for summary judgment, partial or otherwise, that might be appropriate at a later juncture.

SO ORDERED.