Madhu CHOPRA, Plaintiff,

v.

DISPLAY PRODUCERS, INC. and Wims Fyilsiame, Defendants.

No. 96 Civ. 8492 (DC).

United States District Court, S.D. New York.

Oct. 14, 1997.

Bragar & Wexler, P.C. by Gregory A. Blue, New York, NY, for plaintiff.

Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C. by Jonathan D. Farrell, Mineola, NY, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

This motion for summary judgment raises the issue of whether an employee who is covered by a collective bargaining agreement with an arbitration provision is required to arbitrate her sexual harassment and discrimination claims prior to filing suit under Title VII. Because I find that such an employee need not first submit her claims to arbitration, defendants' motion for summary judgment is denied.

## BACKGROUND

Plaintiff Madhu Chopra worked as an assembly line worker for defendant Display Producers, Inc. ("Display Producers") from sometime in 1982 to August 2, 1996. (Compl. ¶¶ 9, 11–17). Since at least 1985, Local 2682, United Brotherhood of Carpenters and Joiners of America AFL—CIO (the "Union"), has represented Display Producers' employees. Display Producers and the Union are parties to a series of collective bargaining agreements. During early 1994 Display Producers entered into a successor collective bargaining agreement (the "CBA"), which provides that it would be in full force and effect from May 1, 1994 through April 30, 1997. (Conneely Aff. ¶ 3, Ex. A § 30(e)).

The 1994 CBA contains both antidiscrimination and arbitration clauses. In relevant part, § 9 of the CBA contains the following antidiscrimination provision:

There shall be no discrimination in hiring, rates of pay, classification, promotion or other working conditions because of race, color or sex except as may be required by law.

(*Id.* at § 9). Section 13(a) contains the CBA's arbitration provision:

All grievances arising between the Employer and the Employees shall be settled jointly in the first instance between the

Employer on the one hand and the Shop Chairman and Shop Committee on the other; should they fail to reach an agreement, the Shop Chairman and Shop Committee shall immediately call the Union representative. In the event an agreement cannot be reached, then the dispute shall be submitted to arbitration.

(*Id.* at § 13(a)).

During the entire period of Chopra's employment with Display Producers, she worked under the supervision of Wims Fyilsiame. (Compl.¶ 9). In 1992, Fyilsiame received a promotion to floor supervisor. Chopra alleges that once Fyilsiame was so promoted, he began sexually harassing her. (Compl.¶¶ 10–13). Chopra claims that after she refused to submit to Fyilsiame's sexual advances, he became abusive and made her working conditions intolerable. Chopra alleges that she terminated her employment with defendants on August 2, 1996, as a result of these conditions. (Compl.¶¶ 11–17).

Chopra filed a charge of discrimination against defendants with the New York District Office of the Equal Employment Opportunity Commission on or about August 6, 1996. On or about September 30, 1996, Chopra received a right to sue letter from the EEOC. (Compl.¶¶ 6–7). Then, on or about November 7, 1996, Chopra filed this suit against Display Producers and Fyilsiame, claiming that defendants' conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1). Defendants now move for summary judgment, pursuant to Fed.R.Civ.P. 56(c), on the grounds that the arbitration clause in the CBA requires Chopra to arbitrate her sexual harassment and discrimination claims before filing suit in federal court.

## DISCUSSION

Defendants advance two arguments in favor of summary judgment: (1) that Chopra's claims are covered by the arbitration clause in the CBA, and therefore must be sent to arbitration; and (2) that Chopra's claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a) *et seq.* ("Section 301"). Neither argument carries the day.

## A. *THE ARBITRATION CLAUSE IN THE CBA*

In moving to dismiss Chopra's discrimination claims, defendants rely on the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991), as well as a number of subsequent circuit and district court decisions, *see, e.g., Austin v. Owens–Brockway Glass*, 78 F.3d 875 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996); *Reece v. Houston Lighting & Power*, 79 F.3d 485 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 171, 136 L.Ed.2d 112 (1996), for the proposition that "an arbitration clause in a collective bargaining agreement bar[s] an individual worker from litigating statutory claims of discrimination in Federal Courts." (Def. Mem. at 4). Plaintiff, in opposing summary judgment, relies on the Supreme Court's decision in *Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Second Circuit's decision in *Tran v. Tran*, 54 F.3d 115 (2d Cir.1995), and several other recent decisions, *see, e.g., Humphrey v. Council of Jewish Fed'ns*, 901 F.Supp. 703 (S.D.N.Y. 1995); *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir.1997), *petition for cert. filed,* 65 U.S.L.W. 3783 (U.S. May 16, 1997) (No. 96–1830); *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437 (10th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3137 (U.S. Aug. 6, 1997) (No. 97–232), in arguing that Chopra's union cannot waive her right to have her Title VII claims heard in federal court. (Pl. Mem. at 6–10). This Court must determine which line of precedent controls on the facts of this case.

### 1. *Alexander*

The seminal decision on "the proper relationship between federal courts and the grievance–arbitration machinery of collective bargaining agreements in the resolution and enforcement of an individual's rights to equal employment opportunities under Title VII" is *Alexander v. Gardner–Denver*, 415 U.S. 36, 38, 94 S.Ct. 1011, 1015, 39 L.Ed.2d 147 (1974). In that case, Harrell Alexander was a union–represented drill operator who had

been fired by Gardner–Denver allegedly for producing too many defective or unusable parts. Alexander, who was African–American, claimed his discharge was racially motivated, and filed a grievance alleging a violation of the nondiscrimination clause in the collective bargaining agreement between his union and his employer. After the arbitrator denied the grievance without addressing the racial discrimination claim, Alexander filed a Title VII action in federal court on the same basis.

Gardner–Denver moved to dismiss Alexander's complaint on the grounds of election of remedies and waiver. The district court granted summary judgment to Gardner–Denver on the ground that Alexander was bound by the prior adverse decision of the arbitrator and was precluded from suing his former employer under Title VII. The Court of Appeals for the Tenth Circuit affirmed. The Supreme Court, however, reversed, concluding that Alexander's statutory right against discrimination was not foreclosed by his earlier submission of a discrimination claim to arbitration. Rather, the Court held that:

> the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance–arbitration clause of a collective bargaining agreement and his cause of action under Title VII.

Alexander, 415 U.S. at 59–60, 94 S.Ct. at 1025. Central to the Court's decision was its finding that "a union cannot prospectively waive a member's Title VII rights in a collective bargaining situation." Alexander, 415 U.S. at 51, 94 S.Ct. at 1021. In two later decisions involving federal statutes other than Title VII, the Supreme Court adhered to the holding and reasoning of Alexander. See Barrentine v. Arkansas–Best Freight System, 450 U.S. 728, 737–38, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981) (Fair Labor Standards Act); McDonald v. City of West Branch, Mich., 466 U.S. 284, 290–91, 104 S.Ct. 1799, 1803–04, 80 L.Ed.2d 302 (1984) (42 U.S.C. § 1983).

In Barrentine, the Supreme Court explained its holding in Alexander as follows:

> The [Alexander] Court found that in enacting Title VII, Congress had granted individual employees a nonwaivable public law right to equal employment opportunities that was separate and distinct from the rights created through the "majoritarian processes" of collective bargaining.

Barrentine, 450 U.S. at 737–38, 101 S.Ct. at 1443. The Barrentine Court further explained that:

> because Congress had granted aggrieved employees access to the courts, and because contractual grievances and arbitration procedures provided an inadequate forum for enforcement of Title VII rights, the [Alexander] Court concluded that Title VII claims should be resolved by the courts de novo.

Id. at 738, 101 S.Ct. at 1443.

### 2. Gilmer

In 1991, the Supreme Court decided Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Robert Gilmer was employed by Interstate/Johnson Lane Corporation ("Interstate/Johnson") as a manager of financial services, and was required by his employment to register as a securities representative with several stock exchanges, including the New York Stock Exchange (the "NYSE"). The Securities Registration Form U–4 completed by Gilmer, commonly known as a Form U–4, includes a provision by which Gilmer agreed to arbitrate any claim that arose between him and his employer and that was required to be arbitrated under exchange rules. Id. at 23, 111 S.Ct. at 1650. Interstate/Johnson terminated Gilmer's employment in 1987, at which time Gilmer was 62 years old. After filing a charge of age discrimination with the EEOC, Gilmer brought suit alleging that the company discharged him because of his age, in violation of the ADEA.

Interstate/Johnson moved to compel arbitration of the ADEA claim, relying on Gilmer's Form U–4 and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The District Court denied the motion, based on Alexander, and

the Fourth Circuit reversed. The Supreme Court, in affirming the Fourth Circuit, distinguished the facts in *Gilmer* from those in *Alexander* (and similar cases) on three grounds:

> First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract–based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective bargaining agreement, the claimants there were represented by the unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights.... Finally, those cases were not decided under the FAA, which ... reflects a "liberal federal policy favoring arbitration agreements."

500 U.S. at 35, 111 S.Ct. at 1657 (citation omitted). Finding the concerns present in arbitrating Title VII claims under a collectively bargained agreement absent where an employee has independently agreed to waive his right to a judicial forum, the Court enforced the arbitration clause. *Id.* at 35, 111 S.Ct. at 1656.

### 3. *Post–Gilmer Decisions*

Following the Supreme Court's decision in *Gilmer,* numerous courts have compelled arbitration of an employee's Title VII allegations outside of the collective bargaining context. *See, e.g., Rojas v. TK Communications, Inc.,* 87 F.3d 745, 747–48 (5th Cir. 1996); *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 659–60 (5th Cir.1995); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 306–12 (6th Cir.1991); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 934–35 (9th Cir.1992); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1486–88 (10th Cir.1994); *Bender*

*v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699–701 (11th Cir.1992).

Many employer/defendants, including Display Producers here, have argued that *Gilmer* effectively overruled *Alexander* and now requires plaintiffs to comply with a collective bargaining agreement's grievance and arbitration procedures prior to filing suit in federal court. Only the Fourth Circuit has accepted this argument. *See Austin v. Owens–Brockway Glass Container,* 78 F.3d 875 (4th Cir.) (affirming grant of summary judgment to employer on the grounds that the plaintiff had failed to submit Title VII and ADA claims to mandatory arbitration under collective bargaining agreement), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996).

The Supreme Court, however, has taken note of the harmony between the two decisions: "*Gilmer* emphasized its basic consistency with our unanimous decision in [*Alexander* ]." *Livadas v. Bradshaw,* 512 U.S. 107, 128 n. 21, 114 S.Ct. 2068, 2080 n. 21, 129 L.Ed.2d 93 (1994). In addition, the clear majority view, including the view of the Second Circuit, is that *Alexander* and its progeny remain good law, and thus an employee need not exhaust grievance and arbitration procedures under a collective bargaining agreement before bringing suit under Title VII. *See Tran v. Tran,* 54 F.3d 115, 117 (2d Cir.1995) ("There is nothing in *Gilmer* which appears to throw anything but favorable light upon the continuing authority of [*Alexander* and its progeny]."), *cert. denied,* —— U.S. ——, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996); *Humphrey,* 901 F.Supp. at 709–10 ("[T]he Second Circuit has held explicitly that *Gilmer* has not changed the validity of *Barrentine* and implicitly that *Gardner–Denver* has remained unchanged as well.") (citation omitted); *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141, 147 (D.Conn.1993) ("*Gilmer* simply applied to contracts made by employees individually. Consequently, *Gilmer* does not alter or undermine the protection established in *Gardner–Denver* against waiver of individual statutory rights through collective–bargaining agreements."); *see also Pryner,* 109 F.3d at 364 (Posner, J.) ("The conservative reading of *Gilmer* is that it just

pruned some dicta from *Alexander* —and it certainly cannot be taken to hold that collective bargaining agreements can compel the arbitration of statutory rights."); *Varner v. National Super Markets, Inc.*, 94 F.3d 1209, 1213 (8th Cir.1996), *cert. denied* —— U.S. ——, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997); *Harrison,* 112 F.3d at 1453–54; *Bintner v. Burlington Northern, Inc.*, 857 F.Supp. 1484, 1488 (D.Wyo.1994); *Araiza v. National Steel and Shipbuilding Co.*, 973 F.Supp. 963, 967 (S.D.Cal.1997).[1]

In the outlying Fourth Circuit decision in *Austin,* Linda Austin filed ·suit in federal court alleging that her employer, Ownes– Brockway Glass Container, Inc., violated Title VII and the ADA. There, Austin's employment was governed by a collective bargaining agreement that provided for mandatory arbitration of all disputes between all employees and the employer. The Fourth Circuit stated that *Gilmer* "made clear that agreements to arbitrate statutory claims are enforceable." 78 F.3d at 880. Thus, the court held that Austin's failure to submit her statutory claims under the grievance–arbitration procedure in the collective bargaining agreement barred her from filing suit in federal court. *Id.* at 885. Citing six cases that compelled arbitration, the court reasoned that "the only difference between these six cases and this case is that this case arises in the context of a collective bargaining agreement." *Austin,* 78 F.3d at 885 (citations omitted).

This Court, however, agrees with the *Austin* dissent that "the only difference makes all the difference." *Id.* at 886 (Hall, C.J., dissenting); *see also Hill v. American Nat'l Can Co./Foster Forbes Glass Div.*, 952 F.Supp. 398, 404 (N.D.Tex.1996); *Buckley v. Gallo Sales Co.*, 949 F.Supp. 737, 743 (N.D.Cal.1996); *Araiza,* 973 F.Supp. at 967– 69. The context in which an arbitration clause arises is critical. In *Alexander,* the clause was contained in a collective bargain-

ing agreement, while in *Gilmer,* it was contained in an individual application for registration as a securities dealer, i.e. a Form U– 4. "Nothing in *Gilmer* suggests that the Court abandoned its concern about the inherent conflicts between group goals and individual rights that exist in the give–and– take of the collective bargaining process." *Randolph v. Cooper Indus.,* 879 F.Supp. 518, 521 (W.D.Pa.1994). Accordingly, the Supreme Court's holding in *Alexander,* that an employee need not exhaust grievance and arbitration procedures under a collective bargaining agreement before bringing suit under Title VII, remains good law.

■ The arbitration clause at issue here was part of a collectively bargained agreement, the CBA, and not an individually negotiated employment contract. Thus, this case is properly decided under *Alexander* and its progeny. While a union may negotiate its members' collective rights, such as working requirements and the right to strike, it is not free to override the *individual* rights conferred by Congress. *Alexander,* 415 U.S. at 50, 94 S.Ct. at 1020. The Supreme Court has explained that "[o]f necessity, the rights conferred [under Title VII] can form no part of the collective–bargaining process since waiver of those rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver." *Alexander,* 415 U.S. at 51–52, 94 S.Ct. at 1021 (citing *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)).

While an arbitration may resolve an employee's grievance involving allegations of conduct violative of a collective bargaining agreement's antidiscrimination provision, it will not resolve the employee's statutory claims. A labor arbitrator "has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar

---

1. In contrast, the Third Circuit recently held that a plaintiff's Title VII suit was barred where the arbitration clause provided that both the employee and the union could compel arbitration and where the language of the collective bargaining agreement expressly provided for the mandatory arbitration of statutory discrimination claims.

*Martin v. Dana Corp.,* 1997 WL 313054, at \*8 (3d Cir. June 12, 1997), *vacated and reh'g en banc granted,* 114 F.3d 428 (3d Cir.1997). The Third Circuit having vacated its decision and granted rehearing en banc, its approach is without support.

to, or duplicative of, the substantive rights secured by Title VII." *Alexander,* 415 U.S. at 53–54, 94 S.Ct. at 1022.

Consistent with this holding, several district courts have also found that in the collective bargaining setting, exhaustion of an arbitration provision in a collective bargaining agreement is not required before an employee may prosecute his or her statutory claims in federal court. *See Pryner v. Tractor Supply Co., Inc.,* 927 F.Supp. 1140, 1147 (S.D.Ind.1996), *aff'd* 109 F.3d 354 (7th Cir. 1997), *petition for cert. filed,* 65 U.S.L.W. 3783 (U.S. May 16, 1997) (No. 96–1830); *Block v. Art Iron, Inc.,* 866 F.Supp. 380, 387 (N.D.Ind.1994); *Griffith v. Keystone Steel & Wire Co.,* 858 F.Supp. 802, 804 (C.D.Ill.1994); *Randolph v. Cooper Indus.,* 879 F.Supp. 518, 521–23 (W.D.Pa.1994); *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141, 144–47 (D.Conn.1993). Thus, defendant's primary argument in favor of summary judgment fails.

**B. *Preemption By The Labor Management Relations Act***

■ Defendants also argue that because Chopra's claims are covered by the collective bargaining agreement, those claims are preempted by § 301 of the Labor Management Relations Act (the "LMRA") and must as a matter of law be dismissed. Defendants are wrong.

Section 301 of the LMRA provides a federal cause of action for violations of collective bargaining agreements. 29 U.S.C. § 185(a). To ensure that such disputes are resolved uniformly, the Supreme Court has determined that § 301 preempts state law claims that require the interpretation of a collective bargaining agreement. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 219, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 1879, 100 L.Ed.2d 410 (1988). Section 301 will not, however, preempt state rules that "proscribe conduct, or establish rights and obligations, independent of a labor contract," *Allis–Chalmers,* 471 U.S. at 212, 105 S.Ct. at 1912, or claims that "simply require the court consider the same factual issues that would be raised by claims under a collective bargaining agreement." *Ziobro v. Connecticut Inst. for the Blind,* 818 F.Supp. 497, 501 (D.Conn.1993).

Section 301 simply does not preempt Title VII claims; preemption of claims under other federal statutes is not necessary to ensure uniformity of adjudication. *See Pelech v. Klaff-Joss, LP,* 828 F.Supp. 525, 531 (N.D.Ill.1993) ("[Section] 301 [is] inapposite when applied to Title VII. The purposes of § 301 are not subverted when a federal court hears a claim brought under a federal statute."); *Gregory v. Southern New England Tel. Co.,* 896 F.Supp. 78, 81 n. 2 (D.Conn. 1994) ("[T]o the extent that [defendants argue that plaintiff's Title VII claims are preempted], these arguments are unavailing and the court need not dwell on them.").

In any event, even if § 301 were to apply to Title VII claims, Chopra's Title VII claims are not preempted. Under Title VII, setting forth an actionable claim for sexual harassment and discrimination does not require interpretation of a collective bargaining agreement. *See Conley v. General Dynamics Corp.,* 1989 WL 201082, at *2 (E.D.Mich. Aug.7, 1989); *Gregory,* 896 F.Supp. at 81 n. 2.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is denied. The parties are to appear for a pretrial conference on October 31, 1997 at 9:30 a.m. in Courtroom 11A, U.S. Courthouse, 500 Pearl Street, New York, New York.

SO ORDERED