*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0405p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————



TERESA WATTS,

        *Plaintiff-Appellant*,

     *v.*

UNITED PARCEL SERVICE, INC.,

        *Defendant-Appellee*.

No. 11-3480

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:03-cv-589—Michael R. Merz, Magistrate Judge.

Argued: October 9, 2012

Decided and Filed:  December 12, 2012

Before:  SUTTON, GRIFFIN, and WHITE, Circuit Judges.

———————————

## COUNSEL

———————————

**ARGUED:** Marc D. Mezibov, LAW OFFICE OF MARC MEZIBOV, Cincinnati, Ohio, for Appellant.  Kasey Bond, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellee.  **ON BRIEF:** Marc D. Mezibov, Susan M. Lawrence, LAW OFFICE OF MARC MEZIBOV, Cincinnati, Ohio, for Appellant.  Kasey Bond, Eugene Droder III, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellee.

———————————

## OPINION

———————————

    HELENE N. WHITE, Circuit Judge.  Teresa Watts appeals the dismissal of her Americans with Disabilities Act (ADA) claim against her employer United Parcel Service, Inc. (UPS).  The court granted UPS judgment as a matter of law on the grounds that Watts's claim was preempted by § 301 of the Labor Management Relations Act (LMRA), and was untimely under the six-month statute of limitations.  Because § 301

does not preempt a claim brought in federal court under the ADA, we REVERSE and REMAND for a new trial on Watts's ADA claim.

**I.**

Teresa Watts began working for UPS in 1990 at its Hamilton, Ohio facility. In April 1999, Watts became a package-car driver. In June 2000, she sustained a serious back injury while unloading a large tire from her delivery truck. She was initially diagnosed with an acute back strain and her treating physician placed her on medical leave. Watts was awarded Temporary Total Disability (TTD) payments including medical treatment, and did not return to work for approximately two years.

In July 2002, UPS asked Watts to undergo a physical evaluation to ascertain whether Watts had reached "maximum medical improvement," as defined by the Ohio Bureau of Workers' Compensation (BWC). On July 2, 2002, the doctor reported that Watts had reached maximum medical improvement and was ready for a gradual return to her normal work in a restricted time frame. After the requisite BWC board proceedings, UPS terminated Watts's TTD payments on November 27, 2002.

On November 5, 2002, prior to her TTD payments being terminated, Watts's doctor released her to return to light-duty work. UPS had a light-duty work program in place called Temporary Alternative Work (TAW). The TAW program allowed injured employees to return to light-duty jobs while they recovered from job-related injuries. Typical tasks included answering phones, pumping gas, washing cars, and other jobs that injured employees were able to perform within their individual physical restrictions. Watts applied for this program but was rejected by UPS. Watts claims that UPS's rejection was based on her disability. UPS claims that Watts was not qualified for the program and points to language in the collective bargaining agreement (CBA) as support for its interpretation of the TAW program requirements.

**II.**

Watts's claims against UPS have gone to trial three times and been appealed to this court once before. In Watts's first trial, she claimed ADA discrimination, sex discrimination, and retaliation.[1] At the conclusion of Watts's case-in-chief, UPS moved for judgment as a matter of law on all claims. The court granted the motion with regard to the ADA claim and denied the motion with regard to the sex-discrimination and retaliation claims. The jury returned inconsistent verdict responses and awarded $200,504.40 to Watts in back pay and "other" damages. Both parties moved for judgment consistent with the jury's special-verdict responses. The court granted judgment in favor of UPS on the sex-discrimination claim, set aside the special verdicts, and ordered a new trial on the retaliation claim. Watts moved for a new trial on the sex-discrimination and ADA claims. The court granted Watts's motion for a new trial as to the sex-discrimination claim and denied the motion as to Watts's ADA claim. The parties had a new trial, the jury returned a verdict in favor of UPS, and Watts timely appealed the court's final judgment.

On appeal, this court affirmed the court's determination that the jury's answers to the special verdict questions could not be reconciled and that UPS was entitled to a new trial on Watts's sex-discrimination claim. We reversed the grant of UPS's motion for judgment as a matter of law on Watts's ADA claim and remanded that claim for a new trial. *See Watts v. United Parcel Serv.*, 378 F. App'x 520 (6th Cir. 2010) (unpublished).

After the close of evidence at the retrial of Watts's ADA claim, the court granted UPS judgment as a matter of law, concluding that the ADA claim was preempted by § 301 of the LMRA because it required interpretation of the CBA. Further, because the action was not filed within the six-month statute of limitations provided for § 301 actions, the court dismissed Watts's ADA claim with prejudice. This timely appeal ensued.

---

[1]The parties agreed to trial before a magistrate judge.

**III.**

A.      Standard of Review

The court granted UPS judgment as a matter of law on Watts's ADA claim under Federal Rule of Civil Procedure 50(a).  A grant of judgment as a matter of law is reviewed de novo.  *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 360 (6th Cir. 2006).  "In entertaining a motion for judgment as a matter of law, the court is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 392 (6th Cir. 2008).  Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"  Fed. R. Civ. P. 50(a)(1).

B.      Whether § 301 of the LMRA preempts a claim under the ADA

The ADA provides protection against discrimination on the basis of disability: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  An employee may bring an action under the ADA to remedy a violation of this provision.  *Id*. § 12117(a).

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Section 301 allows employees to bring suit against employers and labor organizations for violations of a CBA.  In 1962, the Supreme Court held that § 301 preempts state rules regarding the meaning of CBAs, explaining that "substantive principles of federal labor law must be paramount" when enforcing CBAs.  *Teamsters*

*v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).  The Court later clarified that:  "The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).  Three years after *Allis-Chalmers*, the Supreme Court clarified that not every dispute involving a CBA is preempted by § 301: "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10 (1988).

Relying on these preemption cases, UPS argues that Watts's ADA claim is preempted by § 301 because it involves interpretation of the CBA.  UPS further argues that § 301's six-month statute of limitations bars Watts's claim, thus necessitating the dismissal of her suit.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983).  We conclude, however, that UPS's argument fails to appreciate the purpose and origins of the preemption doctrine, and that in any event, Watts's ADA claim does not require interpretation of the CBA.

Congress's power to preempt state law is rooted in the Supremacy Clause of the United States Constitution. *Allis-Chalmers*, 471 U.S. at 208.  The animating purpose of § 301 preemption is to ensure that federal labor law uniformly prevails over inconsistent interpretations of CBAs by state courts.  *Lucas Flour*, 369 U.S. at 103–04; *see also Valinski v. Detroit Edison*, 197 F. App'x. 403, 407–08 (6th Cir. 2006) (unpublished). When a claim asserts a right arising under federal law, and is filed in federal court, that rationale does not apply. *See Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999) ("The preemption doctrine per se does not govern questions relating to the compatibility of two or more federal laws."); *cf. Proctor v. United Parcel Service*, 502 F.3d 1200, 1205 n.2 (10th Cir. 2007) ("Mr. Proctor's ADA claim is clearly not preempted by § 301 because one federal statute cannot preempt another[.]").[2]  Because

---

[2]A number of district courts have concluded that the preemption doctrine is inapposite when applied to federal anti-discrimination claims.  For example, in *Pelech v. Klaff-Joss*, *LP*, 828 F. Supp. 525, 530–31 (N.D. Ill. 1993), the court considered whether § 301 could preempt claims arising under Title VII

Watts's claim is based on a federal cause of action and is in federal court, there is no danger of divergent application of a CBA's provisions by state courts; thus, the motivating purpose of § 301 preemption simply does not apply.

Further, the right to be free from disability discrimination that Watts seeks to vindicate in this action does not arise from the CBA or from state law; rather, it is founded on the ADA. *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir. 1989).[3] A claim under the ADA is a separate, statutorily created federal cause of action independent from a CBA-based contract claim under the LMRA. Watts may have had a claim under the CBA, which she could have sought to vindicate according to the provisions of the CBA or by bringing a § 301 contract-based action under the LMRA. That contract right does not negate her statutory right. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 565 (1987) (holding that the Federal Employers' Liability Act provides "substantive protection . . . independent of the employer's obligations under its collective bargaining agreement").

UPS points to decisions that have dismissed various anti-discrimination claims as precluded by the Railway Labor Act (RLA). However, the RLA, unlike the LMRA, contains mandatory arbitration provisions. *See Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 664 (7th Cir. 2001) (enforcing arbitration under the RLA); *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997) (same); *Crayton v. Long Island R.R.*, No. 05 CV 1721(SLT)(SMG), 2006 WL 3833114, at *5 (E.D.N.Y. Dec. 29, 2006) (same);

---

and concluded that "[t]he purposes of § 301 are not subverted when a federal court hears a claim brought under a federal statute." *Id.* at 531. Other district courts have agreed. *Washington v. Garage Mgmt. Corp.*, No. 11 Civ. 3420(CM), 2012 WL 4336163, at *13 (S.D.N.Y. Sept. 20, 2012) (slip op.); *Willis v. Verizon New York, Inc.*, No. 11-CV-5078, 2012 WL 2370125, at *5 (E.D.N.Y. June 22, 2012) (slip op.); *Jones v. United Parcel Servs., Inc.*, 411 F. Supp. 2d 1236, 1255 (D. Kan. 2006) *aff'd in part, rev'd in part*, 502 F.3d 1176 (10th Cir. 2007); *Turner v. Jewel Food Stores, Inc.*, No. 05 C 5061, 2005 WL 3487788, at *2 (N.D. Ill. Dec. 21, 2005); *Jackson v. Local Union 542, Int'l. Union-Operating Eng'rs*, No. CIV.A.00-854, 2000 WL 1048459, at *2 n.4 (E.D. Pa. July 25, 2000); *Chopra v. Display Producers, Inc.*, 980 F. Supp. 714, 719 (S.D.N.Y. 1997) (Chin, J.) ("Section 301 simply does not preempt Title VII claims; preemption of claims under other federal statutes is not necessary to ensure uniformity of adjudication.").

[3]UPS points to language in *O'Shea* declaring that "[t]he Supreme Court has held many times that § 301 of the LMRA requires that all claims, state *or federal*, whose resolution depends on the interpretation of a collective bargaining agreement be preempted by federal law." 887 F.2d at 686 (emphasis added). But a review of *O'Shea* makes clear that this phrase was *dicta*, as the only issue in the case concerned the preemption of state law. Thus, we decline to follow it.

*Caldwell v. Norfolk S. Corp.*, No. 96CV443P, 1998 WL 1978291, at *5 (W.D.N.C. Mar. 3, 1998) (same). UPS has not argued that Watts was subject to a mandatory arbitration agreement under the CBA that she failed to exhaust before bringing her ADA claim in federal court. RLA cases are therefore distinguishable and do not advance UPS's position.

Nor does *Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir. 2001), prohibit Watts from vindicating her rights under the ADA instead of the LMRA. We first note that *Martin* does not purport to be a preemption case. In *Martin*, the plaintiff brought a hybrid § 301 claim as well as a Federal Labor Standards Act (FLSA) claim premised on alleged breaches of the CBA. Because the FLSA claim was based entirely on a right to payment founded in the CBA, the court held that the "purported FLSA" claim was governed by the six-month statute of limitations that applied to the hybrid § 301 claim, because it was essentially the same claim. *Id.* at 679. Here, Watts is not pursuing a contractually based claim under the CBA, but rather an independent statutory claim under the ADA. Although UPS may rely on the CBA in defense of that claim, Watts's claim itself does not depend on the CBA. *Martin* is therefore distinguishable.

## IV.

Because § 301 of the LMRA does not preempt a claim brought in federal court under the ADA, and Watts's ADA claim does not seek to enforce the CBA, we REVERSE and REMAND for a new trial on the ADA claim.